## THE STATE *vs.* WHEELER.

The ninth section of the act for the suppression of intemperance, which pro-
vides that no person under the penalties therein prescribed, shall own or
keep any spirituous or intoxicating liquor with intent to sell the same in vio-
lation of that act, is not invalid, as conflicting with any provision of the con-
stitution of the United States, or of the constitution of this state, or as opposed
to natural right and the fundamental principles of civil liberty.

Nor is the validity of said ninth section affected by the possible invalidity of
the eleventh section of said act, which provides that all liquor, intended by
the owner or keeper thereof to be sold in violation of said act, shall, with
the vessels in which it is contained, be forfeited to the town wherein it is
kept; for the former section has not that dependence on the latter which is
necessary to such a result.

The rule in such case is, that the unconstitutionality of one part of a statute,
will not render another part of it invalid, unless the parts which are respec-
tively constitutional and unconstitutional, are so mutually connected with,
and dependent on each other, as to warrant a belief that the legislature in-
tended them as a whole, and would not have enacted the part which is con-
stitutional independently.

But said eleventh section is also constitutional and valid.

THIS was a complaint preferred by a grand juror of the
town of New Haven, to a justice of the peace, against Ste-
phen Wheeler, for keeping spirituous liquors with intent to
sell the same in violation of the statute of 1854, entitled " an
act for the suppression of intemperance."

A trial was had before the justice, and the defendant
found guilty. From this decision he appealed to the supe-
rior court, and the cause was tried at the term of said court
holden at New Haven, in September 1855.

Upon the trial the defendants' counsel requested the court
to instruct the jury that the statute upon which the informa-
tion was founded was unconstitutional and void. The court
did not comply with this request, but did instruct them that
the section of the act upon which the information was founded,
prohibiting the keeping of spirituous liquors with intent to
sell the same contrary to the provisions of said act, was con-
stitutional and valid. The court did not express any opinion
upon other sections of the act. The jury having returned a
verdict against the defendant, he filed a motion for a new trial,
which motion was reserved for the advice of this court.

*Flagg*, in support of the motion.

The act upon which the information is based, transcends the authority of the legislature; is an abuse of power; and opposed to the principles of the constitution of the United States, and the constitution of Connecticut; and is therefore void.

1. The ninth section which is counted on in the information is *pars integra* of the whole act. In which view it is unconstitutional.

2. This section is *per se* unconstitutional.

These positions are from necessity so blended, that authorities applicable to one, reach both.

Constitution of Conn., preamble; also, Art. I. §§ 1, 8, 9, 11, 21. 1 Black. Com., 138. 2 Sullivan, 270, 271.

It nullifies the laws and constitution of United States by prohibiting virtually the sale of imported liquors.

It deprives a man of his property without due course of law, presuming his guilt, and requiring him to prove a negative in defense.

(Opinion Choate, &c., pam., 136.) Proof by presumption, &c., untenable. Opinion of Wood, pp. 75, 76.

It creates a monopoly that makes it void. The supreme court and court of appeals of New York, have decided that a law of the same character in that state is unconstitutional.

*Foster* (State Attorney) and *Candee*, against the motion.

1. The statute on which this prosecution is brought is not unconstitutional 12 Wheat., 419. 5 How. U. S., 504. 1 Gray, 1. 4 Conn. R., 535. 12 Conn. R., 253.

2. It is well settled that only such parts of a statute, as are unconstitutional are void. The other parts of the statute continue in force. 1 Gray, 21.

3. If the court should be of opinion that parts of the act on which this prosecution is based are void, no claim of the kind can apply to the ninth section, that section being one of regulation of sale, a power, the right of which is acknowledged by the authorities above quoted, and which has been unquestioned from the earliest history of our state.

STORRS, J. The information in this case is founded on the ninth section of the act for the suppression of intemperance. (Rev. Stat., 821.) That section provides that no person under the penalties therein prescribed, shall own or keep any spirituous or intoxicating liquor, or any mixed liquor of which a part is spirituous or intoxicating, with intent to sell the same in violation of that act. The only question before us is, whether that provision is constitutional.

If the legislature has, in this act, transcended its constitutional powers, in its interdiction of the sale of liquors, the owning or keeping of which for the purpose of such sale is prohibited by the provision in question, it might justly be claimed that the provision is unconstitutional; for we see no ground on which a prohibition of the owning or keeping of an article for the purpose of a sale, which the legislature had no rightful power to prevent, could be upheld. A right to sell an article necessarily includes a right to own or keep it for that purpose, because without owning or keeping it, that purpose could not be accomplished; and a right to do a thing implies a right to do that without which it can not be done. But if, on the other hand, the legislature has gone no further than it had a constitutional right to do, in prohibiting sales of liquors, it is equally clear that the provision in question is obnoxious to no constitutional objection. A right to prohibit or regulate traffic in a particular article, involves the right to prevent or regulate that traffic by prohibiting the keeping of that article for the purpose of carrying on such traffic contrary to such prohibition, and therefore the right to prohibit the keeping of spirits for the purpose of selling them is no more restricted than the right to prohibit or regulate their sale. This principle is too simple and obvious to require argument. It is the one on which that great class of legislation rests, which prohibits the possession of things, which, although not in their nature necessarily hurtful, may be used and are kept, for the purpose of doing acts which are immoral, injurious or illegal. The provision now in question stands on the same ground as laws of that description, the validity of which has no where ever been questioned. If

necessary, it would be easy to show that the power of the legislature is not restricted to prohibiting the keeping of such articles as may be and are designed to be used for the purpose of effectuating a criminal intention, but that it may rightfully prohibit and regulate, as it deems fit, the possession or use of such articles as it may consider to be injurious or dangerous. The enquiry, therefore, now presented is, whether the legislature in this act, has exceeded its constitutional powers in relation to the character of the sales of liquor which it has undertaken to prohibit or regulate ; or, in other words, whether the prohibition in the act embraces any cases of sales with which the legislature had no right to interfere.

The following summary of the sections of this act which relate to the sale of spirituous and intoxicating liquors, will show the exact extent to which it is prohibited and regulated.

Sections 1, and 8, prohibit the manufacture and sale of such liquors except as afterwards provided.

Section 2, excludes from the operation of the act, the sale by the maker at any one time of not less than five gallons of cider or wine, made in this state from fruit grown or gathered by him, and which is sold to be, and is, taken away at one time.

Section 3, excludes also from its operation the sale by the importer of foreign spirits or intoxicating liquors imported under and in accordance with the laws of the United States, and remaining in the original casks or packages, and so disposed of and sold in quantities not less than that in which those laws require such liquor to be imported.

Sections 5 and 6, provide for the appointment by the selectmen of any town, of a limited number of persons as agents of such town, for the purchase and sale of spirituous and intoxicating liquors within such town, for sacramental, medicinal, chemical and mechanical uses, require those persons to give security for their observance of the laws relating to their agency and the sales of liquors, and prescribe the various details of the duties of such agents, which it is unnecessary to particularize.

Section 4, empowers the commissioners of any county to authorize any person to manufacture such liquors, and sell the same to the said town agents.

Section 7, prohibits any person from manufacturing in violation of the act, any liquors which are spirituous or intoxicating in whole or part.

The penalties prescribed for a violation of these prohibitory sections, including that the validity of which is now in question, are of a personal character only, as distinguished from a forfeiture of the liquor made, kept or sold.

Viewing these provisions by themselves, and independently of the succeeding sections by which liquor intended by the owner or keeper thereof to be sold in violation of the act, is subjected to forfeiture, to which we shall advert hereafter, we are clearly of opinion that they are constitutional. Their validity must depend on the enquiry whether they are repugnant to the constitution of the United States, or of this state, as we are aware of no other ground on which they can be pronounced void.

In regard to the constitution of the United States, the only claim is, that they conflict with that clause which confers upon Congress the power to regulate commerce with foreign nations and among the several states. (Art. 1, sect. 8.) But the decisions of the supreme court of the United States in *Mc Collough* v. *Maryland,* (4 Wheat., 316,) *Brown* v. *Maryland,* (12 Wheat., 453,) and what are termed the license cases, (5 Howard, 574,) which are authoritative on this subject, furnish a full and explicit answer to this objection. The point decided in *Brown* v. *Maryland,* as stated, and with great precision, by Ch. J. Taney, in 5th Howard, 574, is, that an article authorized by a law of Congress to be imported, continues to be a part of the foreign commerce of the country, while it remains in the hands of the importer for sale in the original bale, package or vessel in which it was imported; that the authority given to import necessarily carries with it a right to sell the imported article in the form and shape in which it was imported; and that no state either by direct assessment or by requiring a license from the importer

before he is permitted to sell, can impose any burden upon him or the property imported, beyond what the law of Congress itself imposes; but that when the original package is broken up for use or for retail by the importer, and also when the commodity has passed from his hands into the hands of a purchaser, it ceases to be an import, or a part of foreign commerce, and becomes subject to the laws of the state, and may be taxed for state purposes, and the sale regulated by the state, like any other property. This, he says, he understands to be substantially the decision in that case, drawing the line between foreign commerce, which is subject to the regulation of Congress, and internal or domestic commerce, which belongs to the states, and over which Congress can exercise no control.

In the license cases it was determined that the laws of Massachusetts prohibiting any person from selling spirituous liquors in less quantity than twenty-eight gallons, without a license to be granted by certain state officers, and providing that such licenses should not be granted where, in their opinion, the public good did not require them to be granted; that laws of Rhode Island, prohibiting the sale of such liquor in a less quantity than ten gallons, although the liquor sold was foreign liquor duly imported and was bought of the importer; and that laws of New Hampshire, imposing similar restrictions upon domestic liquor sent from one state to another, and sold in the original cask, were neither of them objectionable as infringing the constitution of the United States.

These decisions most clearly show, that the exception contained in the third section of the act now in question, obviates every objection that can be made to it on the ground that it is repugnant to the constitution of the United States or the laws passed under its authority.

The right of the United States government to protect imports, while they remain such, as arising from its power to regulate commerce, and of a state to regulate or restrict, according to its own sense of propriety, the sale of foreign goods, as a police power, essential to its sovereignty, inde-

pendence, peace and security, are both fully recognized in these cases. The only question, and one on which there was some diversity of opinion, was, as to the time when imports ceased to be under the protection of the general government, and became subject to state legislation like all other property. We have stated the decision on that point.

The competency of a state, in the exercise of its legislative power, to enact such police laws, restricted, if at all, only to the extent indicated by these decisions, was admitted by all the judges, and by several of them very pointedly declared. In the license cases, Ch. J. Taney said: " Although a state is bound to receive and permit the sale by the importer of any article of merchandize which Congress authorizes to be imported, it is not bound to furnish a market for it, nor to abstain from the passage of any law which it may deem necessary or advisable, to guard the health or morals of its citizens, although such law may discourage importation, or diminish the profits of the importer, or lessen the revenue of the general government. And if any state deems the retail and internal traffic in ardent spirits injurious to its citizens, and calculated to produce idleness, vice or debauchery, I see nothing in the constitution of the United States to prevent it from restraining the traffic, or from prohibiting it altogether, if it thinks proper." Mr. Justice McLean said : " The acknowledged police power of a state extends often to the destruction of property. The state may regulate the sale of foreign spirits, and such regulation is valid though it reduce the quantity of spirits consumed. A license may be required to sell foreign articles, when those of domestic manufacture are sold without one ; and if the foreign article be injurious to the health or morals of the community, a state may, in the exercise of that great and conservative police power which lies at the foundation of its prosperity, prohibit the sale of it." Mr. Justice Grier said : " The true question presented by these cases, and one which I am not disposed to evade, is, whether the states have a right to prohibit the sale and consumption of an article of commerce which they believe to be pernicious in its effects, and the cause of disease,

pauperism and crime. It is not necessary for the sake of justifying the state legislation now under consideration, to array the appalling statistics of misery, pauperism and crime, which have their origin in the use or abuse of ardent spirits. The police power, which is exclusively in the states, is alone competent to the correction of these great evils, and all measures of restraint or prohibition necessary to effect the purpose are within the scope of that authority."

Such being the extent of the general legislative power of a state, we come to the enquiry, whether the legislature of this state, in enacting the provisions which we are now considering, have violated any of the provisions of our state constitution. This point is briefly disposed of by the remark, that we find nothing whatever in that instrument, which either expressly or impliedly restricts, or even touches upon, the exercise of the power of the legislature, in relation to the subject we are examining.

This absence of constitutional restraint in this respect upon the power of the legislature, disposes of the cases recently decided by the court of appeals of the state of New York, which have been cited by the defendant. Those cases are wholly inapplicable to the present, as they were expressly decided on the ground, that the legislative act there in question conflicted with certain specific restrictions imposed on the legislature by the constitution of that state, and on that ground exclusively.

(The defendant insists that we should pronounce the law now in question to be void, on the ground that it is opposed to natural right, and the fundamental principles of civil liberty. We are by no means prepared to accede to the doctrine involved in this claim, that, under a written constitution like ours, in which the three great departments of government, the executive, legislative and judicial, are confided to distinct bodies of magistracy, the powers of each of which are expressly confined to its own proper department, and in which the powers of each are unlimited in its appropriate sphere, except so far as they are abridged by the constitution itself, it is competent for the judicial department to deprive

the legislature of powers which they are not restricted from
exercising by that instrument. It would seem to be suffi-
cient to prevent us from thus interposing, that the power ex-
ercised by the legislature is properly legislative in its charac-
ter, which is unquestionably the case with respect to the law
we have been considering, and that the constitution contains
no restriction upon its exercise in regard to the subject of it.
There is, however, no occasion to pursue this topic.) The
law in question is, in our opinion, obnoxious to no objection,
which could be derived from the establishment of the doc-
trine advanced by the defendant. It is not different in its
character, although it may be more stringent in some of its
provisions, from those numerous laws which have been
passed in almost all civilized communities, and in ours from
the earliest settlement of our state, regulating the traffic in
spirituous liquors, and which are based on the power pos-
sessed by every sovereign state, to provide by law, as it shall
deem fit, for the health, morals, peace and general welfare of
the state; and which, whatever may have been thought of
their expediency, have been invariably sustained as being
within the competency of the legislature to enact.

The eleventh section of the act we are considering, de-
clares that all liquor, intended by the owner or keeper thereof,
to be sold in violation of that act, shall, with the vessels in
which it is contained, be forfeited to the town wherein it is
kept, and several succeeding sections prescribe the manner in
which such forfeiture shall be enforced. The defendant
claims that these sections are unconstitutional in various re-
spects, and hence insists that the provision of the ninth sec-
tion, the validity of which is now in question, is therefore
also invalid. There are two decisive answers to this claim.
In the first place this court has recently held in the case of
*The State* v. *Brennan's Liquors,* (ante p. 278,) that neither of
those sections in relation to the forfeiture of liquors so owned or
kept, nor any of their provisions, is obnoxious to any consti-
tutional objection; and, in the second place, if their inva-
lidity on that ground were conceded to the fullest extent

claimed by the defendant, the validity of the provision now in question would not be thereby affected.

It is an established principle that a statute may be unconstitutional, or otherwise invalid, as to some of its provisions, and good as to others. *Fisher* v. *McGirr*, 1 Gray, 1. 24 Pick., 361. 4 Met., 288. 2 Blackf., 10. The rule on this subject is, that the unconstitutionality of one part of a statute will not render another part of it invalid, unless, to adopt the language of Ch. J. Shaw, in *Warren* v. *Mayor and Aldermen of Charleston,* (2 Gray, 98,) the parts which are respectively constitutional and unconstitutional, are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant a belief that the legislature intended them as a whole, and that if all could not be carried into effect, the legislature would not pass the residue independently ; in which case, if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected must fall with them. It is quite clear that the provision on which the present information is founded, is, in its nature, wholly independent and disconnected from those which relate to the forfeiture of liquors, and therefore falls within the general rule, and not within the limitation of it which is thus laid down ; and therefore that if that provision is within the scope of legitimate legislation, it is as valid, although those which provide for such forfeiture, were objectionable, as if it had been enacted by a separate statute. The reason of the rule, that the validity of one part of an act is not necessarily affected by the invalidity of another part, is very clearly stated by Ch. J. Shaw in the case just mentioned, and in illustration of it, after recognizing the rule as one of which there is no doubt, he says : " It has been so decided in the case of *Fisher* v. *McGirr* and al., in which it was held that all that part of the act of 1852, respecting the manufacture and sale of spirituous liquors on the terms and in the manner there provided, was unconstitutional, and yet we are every term rendering judgment against persons for selling

---

The State *v.* Wheeler.

---

spirituous liquors contrary to the other provisions of the same statute."

The defendant claims, that that part of the ninth section on which this information is brought, is invalid by reason of the unconstitutionality of the provision in that section, that proof of the finding of the liquor specified therein in the possession of the accused, in any place, (with an exception not necessary to be stated,) shall be presumptive evidence of their being kept for sale contrary to that section, on the trial of complaints for its violation. It is claimed that this provision conflicts with the ninth section of the declaration of rights in our state constitution. The answers to this objection are the same as those given to that which we have just considered. We have recently held, in the case of *State* v. *Cunningham*, (ante p. 195,) that the validity of that provision is not affected by that section. And if it were annulled by it, the only effect would be that that provision alone would be rendered thereby void, while the preceding enactment, on which this information is founded, would remain in full force. There is no such necessary connexion or dependence between them that the latter would fall with the former. If that provision were destroyed, the only consequence would be, that it would be necessary to support the information by common law testimony.

A new trial therefore is not advised.

In this opinion, the other judges, WAITE and HINMAN, concurred.

A new trial not granted.