UNITED INTERCHANGE, INC., ET AL. *v.* THOMAS J. SPELLACY, INSURANCE COMMISSIONER

WYNNE, C. J., BALDWIN, DALY, KING and MURPHY, Js.

Argued October 9—decided December 3, 1957

*George F. Lowman,* with whom were *Philip M. Drake* and, on the brief, *John F. Spindler,* for the appellants (plaintiffs).

*Louis Weinstein,* assistant attorney general, with whom, on the brief, was *John J. Bracken,* attorney general, for the appellee (defendant).

BALDWIN, J.   The plaintiffs in this action sought a judgment declaring unconstitutional certain pro-

visions in the act requiring the licensing of real estate brokers and salesmen, and an injunction restraining the defendant from administering and enforcing the act against them. General Statutes, Cum. Sup. 1955, § 2339d. The trial court rendered judgment for the defendant and the plaintiffs have appealed.

Following is a summary of the facts: The plaintiff United Interchange, Inc., is a New York corporation with its principal place of business in New York City. It will be referred to as United. It has not qualified to do business in Connecticut. By means of extensive advertising in newspapers and periodicals and on the air, United obtains the names of business and property owners who desire to sell, lease or make an exchange of their business enterprises or properties. It employs the plaintiffs Joel Goldshine and Lester Kirby, nonresidents, on a commission basis to solicit in this state contracts from such prospective sellers to advertise their businesses or properties in "Buyers Digest" and "Brokers Bulletin," two printed media published by Universal Interchange, Inc., hereinafter referred to as Universal, under agreement with United. The price for the insertion of an advertisement in the Digest and the Bulletin is a stipulated sum depending in amount upon the space devoted to the advertisement. It is payable either upon the sale of the property or upon the expiration of three months from the date of United's acceptance of the advertising contract, whichever occurs first.

"Buyers Digest" is issued monthly in magazine form and is substantially a directory containing advertisements for the sale, lease or exchange of many kinds of real estate, interests therein, and business opportunities. It includes some editorial

material relating to real estate and business opportunity matters. "Brokers Bulletin" is essentially a folder of unbound sheets listing prospective sales and exchanges and is issued to real estate brokers and others for the purpose of enlisting their aid in effecting sales during the period between the regular publications of the Digest. Universal, which publishes and circulates these periodicals under contract with United, advertises them extensively. Both publications are available free of charge to anyone who requests them. The Digest is sent without cost to chambers of commerce, public libraries and real estate and business opportunity brokers throughout the United States and elsewhere. United's purpose is primarily to promote sales and exchanges and to refer sales opportunities to licensed real estate brokers. It operates in several other states. Its salesmen help prospective sellers to prepare their advertisements.

Prior to June, 1955, United was conducting its business in Connecticut, and during this period it and its affiliate, Universal, sold in this state 225 contracts for a total of $13,000. The defendant received complaints of fraudulent representations from those doing business with companies engaged in a type of enterprise similar to that of the plaintiffs. Some of these complaints were to the effect that sales were guaranteed and that no payment need be made unless there was a sale. Because of these complaints the defendant sought the legislative amendment which is now challenged.

In 1953 the General Assembly enacted a law requiring the licensing of real estate brokers and salesmen. General Statutes, Cum. Sup. 1955, c. 237a. Before a license can issue, the prospective licensee must apply in writing to the insurance commissioner,

who is charged with the administration of the law. Cum. Sup. 1955, § 2342d. The commissioner is authorized to require of the applicant such information bearing upon his integrity and competency as is deemed desirable. § 2343d. The commissioner is directed to subject the individual applicant, or each member of an association or a partnership applying for a license, or each of the officers and salesmen of a corporation, to a written examination to determine the competency of the person being examined "to act as a real estate broker or real estate salesman." Ibid. The fee for a broker's license and each annual renewal thereof is $15 for an individual, a member of a partnership or an association, or a corporate officer; the fee for a salesman's license is $5. Ibid. The applicant is required to post with the commissioner a bond in favor of the state with corporate surety in the amount of $2500 if the application is for a broker's license, and in the amount of $1000 if it is for a salesman's license. § 2344d. No one can act as a broker or salesman without a license. §§ 2341d, 2352d.

The 1953 act defined the term "engaging in the real estate business" to mean "acting for another and for a fee, commission or other valuable consideration in the listing for sale, selling, exchanging, buying or renting or offering or attempting to negotiate a sale, exchange, purchase or rental of an estate or interest in real estate, or collecting upon, or offering or attempting to negotiate, a loan secured or to be secured by a mortgage or other encumbrance upon or transfer of real estate." Cum. Sup. 1953, § 1783c (c). A broker was defined as one engaged in the activities described above as constituting "engaging in the real estate business"; § 1783c (a) ; and a salesman was defined as one employed by a broker to do

any of the things constituting "engaging in the real estate business." § 1783c (b). In 1955 the General Assembly repealed § 1783c and enacted a substitute therefor, § 2339d of the 1955 Cumulative Supplement,[1] which added to the language of § 1783c

[1] "Sec. 2339d. DEFINITIONS. [The language which was added in 1955 is italicized.] As used in this chapter (a) the term 'real estate broker' means any person, partnership, association or corporation who, for another and for a fee, commission or other valuable consideration, lists for sale, sells, exchanges, buys or rents, or offers or attempts to negotiate a sale, exchange, purchase or rental of an estate or interest in real estate, or collects or offers or attempts to collect rent for the use of real estate, or negotiates or offers or attempts to negotiate a loan secured or to be secured by a mortgage or other encumbrance upon or transfer of real estate. The term 'real estate broker' shall also include any person, partnership, association or corporation employed by or on behalf of the owner or owners of lots or other parcels of real estate, at a stated salary, upon commission, upon a salary and commission basis or otherwise to sell such real estate, or any parts thereof, in lots or other parcels, and who sells or exchanges, or offers, attempts or agrees to negotiate the sale or exchange of any such lot or parcel of real estate. *Said term shall also include any person who engages in the business, for a fee, in connection with any contract whereby he undertakes to promote the sale of real estate through the listing of such property in a publication issued primarily for such purpose or for referral of information concerning properties to licensed real estate brokers or both;* (b) the term 'real estate salesman' means a person employed by a real estate broker to list for sale, sell or offer for sale, to buy or offer to buy or to negotiate the purchase or sale or exchange of real estate or to negotiate a loan on real estate, or to lease or rent or offer to lease, rent or place for rent any real estate, or to collect or offer or attempt to collect rent for the use of real estate for or in behalf of such real estate broker, or who offers, sells or attempts to sell the real estate of a licensed broker, *or who in behalf of such real estate broker solicits contracts undertaking the promotion of the sale of real estate through the listing of such property in a publication issued primarily for such purpose or for referral of information concerning properties to licensed real estate brokers or both,* provided employees of any real estate broker whose principal occupation is clerical work in an office, or janitors or custodians engaged principally in that occupation, shall not be deemed to be real estate salesmen within the terms of this chapter; (c) the term 'engaging in the real estate business' means acting for another and for a fee,

defining the term "engaging in the real estate business" the provision that "said term includes engaging in the business, for a fee, in connection with any contract whereby any person undertakes to promote the sale of real estate through the listing of such property in a publication issued primarily for such purpose or for referral of information concerning properties to licensed real estate brokers or both." The definition of "real estate broker" was enlarged to embrace any person carrying on such an activity. A "salesman" was also redefined to include a person employed by a broker for such an activity.

The 1953 act requiring the licensing of real estate brokers and salesmen (Cum. Sup. 1953, c. 237a), including § 1783c, was declared to be a valid exercise of the police power under the federal and state constitutions in *Cyphers* v. *Allyn*, 142 Conn. 699, 118 A.2d 318. The plaintiffs now challenge the constitutional validity of the amendatory language of § 2339d, which, it is conceded, comprehends them. They charge that it violates the due process, equal protection of the laws and freedom of the press provisions of the federal and state constitutions. U. S. Const. Art. I, Amend. XIV § 1; Conn. Const. Art. I §§ 1, 5, 12.

---

commission or other valuable consideration in the listing for sale, selling, exchanging, buying or renting or offering or attempting to negotiate a sale, exchange, purchase or rental of an estate or interest in real estate, or collecting upon, or offering or attempting to negotiate, a loan secured or to be secured by a mortgage or other encumbrance upon or transfer of real estate, *and said term includes engaging in the business, for a fee, in connection with any contract whereby any person undertakes to promote the sale of real estate through the listing of such property in a publication issued primarily for such purpose or for referral of information concerning properties to licensed real estate brokers or both;* (d) the word 'person' shall mean and include any individual, partnership, association or corporation. (Effective June 6, 1955.)"

We shall consider first the argument advanced with regard to due process and equal protection of the laws. Successfully to pass the test of constitutional validity in these respects, the act as amended to embrace these plaintiffs must be a proper exercise of the police power of the state. We have recently examined the basic principles applicable to police legislation regulating the conduct of business and professional activity. *State* v. *Gordon,* 143 Conn. 698, 702, 125 A.2d 477; *Calve Bros. Co.* v. *Norwalk,* 143 Conn. 609, 612, 124 A.2d 881; *Cyphers* v. *Allyn,* supra, 705; *Amsel* v. *Brooks,* 141 Conn. 288, 298, 106 A.2d 152. The test is whether (1) some need for serving the public health, safety or general welfare makes the regulatory legislation necessary or desirable, and (2) the legislation serves that need in a way which is not arbitrary, discriminatory and confiscatory to an unreasonable and unnecessary degree. In passing upon the need and in fashioning the method of serving it, the legislature under its police powers has a broad discretion. The limitation upon this discretion is drawn by the courts at that point where the regulatory measures either fail to serve the public good or serve it in a despotic way.

The 1955 amendment prevents the plaintiffs from carrying on a lawful business unless they obtain real estate brokers' and salesmen's licenses. This is done by defining the activities of the plaintiffs as "engaging in the real estate business" and requiring of them brokers' and salesmen's licenses in order to continue their activities. It is true that legislatures may define the terms used in their enactments and that courts are bound to accept their definitions. *First Federal Savings & Loan Assn.* v. *Connelly,* 142 Conn. 483, 489, 115 A.2d 455, and cases cited. This rule extends only to the meaning to be given by the courts, in

construing a statute, to the terms defined. It does not prevent a court, when the constitutionality of the statute is attacked, from examining a definition to see whether it logically and fairly describes what it purports to define. To take an extreme case, it is questionable whether a legislature could, by defining as a dog an animal having the components of a horse, subject the owner of a horse to the dog licensing statute.

United's business is primarily advertising. It differs from newspaper and magazine publishers generally in the respect only that it limits the range of its advertising activities to specific types of property. Its purposes are to bring to the attention of prospective purchasers properties available for purchase and to the attention of prospective sellers buyers who are looking for particular kinds of properties. These are the fundamental purposes of all sales advertising. United's salesmen secure written contracts from property sellers or buyers to advertise in its publications. These salesmen assist in the preparation of these advertisements. The contracts and the advertisements are then submitted to United and thereafter published in "Buyers Digest" and "Brokers Bulletin." It does not appear, however, that these salesmen advise as to price and for that reason should have some knowledge of real estate values, nor that they direct or assist in the negotiations between the interested parties and so must know something about real estate incumbrances, taxes, zoning and other regulations, and other similar factors involved in a real estate deal. Why then should the officers of United and its salesmen be required to take a written examination to establish their competency to carry on the real estate business with all of the detail which that involves?

The terms of payment prescribed by United are such that its salesmen have no occasion to handle its customers' funds. Why then should its salesmen be required, in order to carry on its business, to post surety company bonds in substantial amounts, renewable annually?

The only reason advanced for the need and design of this amendment is to prevent fraud, a purpose which has always been considered legitimate for the exercise of the police power when the facts warranted it. *Walp* v. *Mooar,* 76 Conn. 515, 521, 57 A. 277; *State* v. *Feingold,* 77 Conn. 326, 333, 59 A. 211. A legitimate purpose, however, cannot justify an unreasonable and unnecessarily arbitrary and discriminatory method of accomplishing it. *State* v. *Miller,* 126 Conn. 373, 378, 12 A.2d 192; *Hart* v. *Board of Examiners of Embalmers,* 129 Conn. 128, 133, 26 A.2d 780; *Gionfriddo* v. *Windsor,* 137 Conn. 701, 706, 81 A.2d 266; *Amsel* v. *Brooks,* 141 Conn. 288, 300, 106 A.2d 152; *Louis K. Liggett Co.* v. *Baldridge,* 278 U.S. 105, 113, 49 S. Ct. 57, 73 L. Ed. 204; *New State Ice Co.* v. *Liebmann,* 285 U.S. 262, 278, 52 S. Ct. 371, 76 L. Ed. 747; *Smith* v. *Texas,* 233 U. S. 630, 638, 34 S. Ct. 681, 58 L. Ed. 1129; *State* v. *Ballance,* 229 N.C. 764, 771, 51 S.E.2d 731.

The legislative power to regulate a business fraught with particular danger to the public is much wider than in the case of an ordinary lawful business such as advertising. "In the one business no citizen has an absolute right to engage; in the other all citizens have a right and an equal right to engage. The difference is vital." *State* v. *Conlon,* 65 Conn. 478, 486, 33 A. 519; *State* v. *Porter,* 94 Conn. 639, 643, 110 A. 59; 30 Am. Jur. 278, § 40. Where the business is a lawful one and involves no particular danger to the public, "the regulation must not be unrea-

sonably in excess of what is necessary to accomplish the supposed end; and in the case of a business in which all citizens have a right and an equal right to engage, the principle of equality of rights must, in this State, be observed." *State* v. *Porter, supra,* 645. This is not to imply that activities such as the plaintiffs carry on cannot, consistently with constitutional limitations, be regulated. That is not the issue in this case. Rather, the question for decision is whether this particular legislation is consistent with those limitations.

The amendment purports to describe the business of the plaintiffs as promoting "the sale of real estate through the listing of . . . property in a publication issued primarily for such purpose or for referral of information concerning properties to licensed real estate brokers or both." Cum. Sup. 1955, § 2339d (c). The finding discloses that this is in fact a fair description of what the plaintiffs purport to do. That being so, there is no sound reason for requiring them to take a written examination on their competency as real estate brokers and salesmen, to furnish a corporate surety bond and to pay substantial fees for the original issuance of their licenses and for the annual renewal thereof. Such requirements are unnecessarily burdensome and discriminatory.

Courts of other jurisdictions have reached the same conclusion on facts analogous to those in the instant case. In *Whitcomb* v. *Emerson,* 46 Cal. App. 2d 263, 269, 115 P.2d 892, a statute providing for the licensing of cosmetologists after examination defined the term "cosmetology" in such a way as to include hairdressing, massage, and manicuring. The plaintiff in that case had long practiced as a masseuse. The board charged with administering the statute ordered her to cease performing any act of

cosmetology until she had obtained a license. The plaintiff had never studied hairdressing or manicuring, had no training or proficiency in those particular branches of cosmetology as defined by the statute, and could not pass an examination in them. The court held that although an activity not harmful in itself might endanger the public health, safety or general welfare if practiced by an inexperienced and incompetent person and therefore be a proper subject for regulation, a statute which prevented a person from carrying on the lawful occupation of masseuse unless she could also qualify under the statute as a hairdresser and manicurist was an unconstitutional exercise of legislative power. Id., 277. A similar line of reasoning controlled the court's decision in the following cases: *Prouty* v. *Heron,* 127 Colo. 168, 176, 255 P.2d 755; *Berry* v. *Summers,* 76 Idaho 446, 452, 283 P.2d 1093; *People* v. *Schaeffer,* 310 Ill. 574, 580, 142 N.E. 248; *Scully* v. *Hallihan,* 365 Ill. 185, 191, 6 N.E.2d 176; *Johnson* v. *Ervin,* 205 Minn. 84, 88, 285 N.W. 77; *People* v. *Ringe,* 197 N.Y. 143, 149, 90 N.E. 451; *Evans* v. *Baldrige,* 294 Pa. 142, 144, 144 A. 97; *Timmons* v. *Morris,* 271 F. 721, 727; *Baker* v. *Daly,* 15 F.2d 881, 882.

While the court has not so found, we may nevertheless take judicial notice of the fact that a statute severely limiting the practice of a lawful vocation by stringent qualifications has a tendency to create a monopoly by excluding those who may not possess the highest qualifications from carrying on a lawful business. *Buehman* v. *Bechtel,* 57 Ariz. 363, 376, 114 P.2d 227; *Ex Parte Mihlfread,* 128 Tex. Crim. 556, 558, 83 S.W.2d 347.

The defendant argues that even without the amending language the definitions contained in § 2339d are sufficiently broad to include the plaintiffs'

activities. The adoption of the 1955 amendment conclusively shows that the legislature did not ascribe to the 1953 form of the statute any such intent as that claimed. *Willoughby* v. *New Haven,* 123 Conn. 446, 455, 197 A. 85; *State ex rel. Markley* v. *Bartlett,* 130 Conn. 88, 93, 32 A.2d 58. Furthermore, courts must avoid if they can a construction which for the reasons hereinbefore stated would render the statute apart from the amending language invalid. *Cedar Island Improvement Assn.* v. *Clinton Electric Light & Power Co.,* 142 Conn. 359, 372, 114 A.2d 535. The defendant gains nothing on this point.

The view which we have taken makes it unnecessary to consider the plaintiffs' claim that the constitutional guarantee of freedom of the press was violated.

We hold that the provisions of § 2339d which embrace the plaintiffs' activities within the definition of what constitutes "engaging in the real estate business" and the activities of a "real estate broker" or a "real estate salesman" violate the constitutional rights of the plaintiffs and are null and void.

There is error, the judgment is set aside and the case is remanded with direction to render judgment in accordance with this opinion.

In this opinion the other judges concurred.