## MOTT'S SUPER MARKETS, INC. *v.* ATTILIO R. FRASSINELLI, COMMISSIONER OF CONSUMER PROTECTION

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

482

Argued April 6—decided June 20, 1961

*Joseph P. Cooney,* with whom were *Patrick J. Flaherty* and, on the brief, *Henry F. Cooney* and *John F. Scully,* for the appellant (plaintiff).

*Michael J. Scanlon,* assistant attorney general, with whom, on the brief, was *Albert L. Coles,* attorney general, for the appellee (defendant).

BALDWIN, C. J.  The plaintiff has appealed from a judgment of the Court of Common Pleas which sustained the commissioner of consumer protection, the defendant, in issuing an order, pursuant to § 42-112 of the General Statutes, that the plaintiff cease and desist from advertising and selling in its supermarkets two products, both well-known brands, at less than "cost to the retailer" as defined in General Statutes § 42-111.

The legislation under consideration is chapter 736 of the General Statutes, as amended, entitled "Unfair Sales Practices."  Section 42-112 contains, in summary, the following provisions:  Whenever

the commissioner of consumer protection has reason to believe that any person has violated any provision of the chapter, or whenever proper evidence of any violation has been presented to him, and it appears to him that a proceeding in respect thereto is in the public interest, he shall cause an investigation to be made. If there is satisfactory evidence of an alleged violation, the commissioner shall mail, by certified mail, to the alleged violator a complaint stating the charges and giving notice of a time and place for a hearing before the commissioner. The person against whom complaint is made may appear and show cause why an order should not be entered by the commissioner requiring him to cease and desist from the violation alleged. If, upon the hearing, the commissioner is of the opinion that the method of competition or the act or practice in question is prohibited by the chapter, he shall make a report of his findings of fact and order the violator to cease and desist from using such methods of competition or such practices. Any person who violates the order or any provision of the section shall be fined not less than $25 nor more than $100 for each offense.

Section 42-114 forbids any retailer, as defined in § 42-111, to "advertise, offer to sell or sell at retail any item of merchandise at less than cost to the retailer," as that term is defined in § 42-111, "with intent to injure competitors or destroy competition." Section 42-114 specifically states that "[e]vidence of any advertisement, offer to sell or sale of any item of merchandise by any retailer . . . at less than cost to him shall be prima facie evidence of intent to injure competitors or destroy competition." Any person against whom the commissioner has issued an order may obtain a review of it in the

Court of Common Pleas. General Statutes § 42-113. The commissioner is required to file with the court a transcript of the entire record of the proceedings before him, including all the evidence, and his report and order. Ibid. The court has the power to affirm, modify or set aside the order and to enforce it, or so much of it as the court sustains. Ibid. The findings of the commissioner as to the facts, if the findings are supported by evidence, shall be conclusive. Ibid. Any violation of the order, as affirmed, is punishable by a fine of not less than $50 nor more than $100 for each sale or advertisement in violation of the law. Ibid. Section 42-115 sets forth the circumstances under which items may be advertised or offered for sale, or sold, below cost and excepts them from the prohibition of the other sections of the chapter.

The commissioner complained against the plaintiff, held a hearing and took testimony. Thereafter, on April 29, 1960, he issued an order that the plaintiff cease and desist from "[a]dvertising and selling" Maxwell House coffee and Duncan Hines cake mixes at less than "cost to the retailer" and from "[t]he advertising offering to sell or sale of 'loss leaders' as a method of competition." The finding of the commissioner can be stated briefly as follows: The plaintiff, by its president, admitted the advertising and selling of Maxwell House coffee and Duncan Hines cake mixes at less than "cost to the retailer." These items were advertised and sold with the intent of luring customers to the plaintiff's store—a method of operation referred to as the use of "loss leaders." The intent of the plaintiff was to entice customers to the store so that they would purchase other items besides those advertised. We quote verbatim from one paragraph of the com-

missioner's finding, because it is crucial: "Although the avowed purpose of Mott's advertising the aforementioned items at less than cost to the retailer . . . was to merchandise their products and bring the public into their store, they must have necessarily intended to injure competitors because they admitted a competitor is injured when one or more of the competitors' customers are induced to and in fact do shop at Mott's Super Markets, Inc."

The court affirmed so much of the commissioner's order as pertained to the advertising and sale of Maxwell House coffee and Duncan Hines cake mixes at less than "cost to the retailer," and it enjoined the plaintiff, under penalty of $1000, from violating that part of the order; it set aside the part which pertained to the advertising or sale of "loss leaders" as a method of competition generally.

The plaintiff, on its appeal to this court, claims (1) that the provision of § 42-114 which makes evidence of any advertisement, offer to sell or sale of any item at less than cost "prima facie evidence of intent to injure competitors or destroy competition" renders the statute unconstitutional; and (2) that the finding that the plaintiff had the intent of injuring competitors within the prohibition of the statute is unsupported by the evidence. Our Unfair Sales Practices Act, now chapter 736 of the General Statutes, was first adopted in 1939. Cum. Sup. 1939, §§ 922e, 923e, 924e; Rev. 1949, §§ 6715, 6716, 6717. The language, in what is presently § 42-114, against which the plaintiff directs its attack was contained, in identical wording, in §§ 923e and 6716. The prohibitions of the section originally could be enforced only upon a complaint to the Superior Court, by the person allegedly injured, praying for injunctive relief against the acts complained of. Cum. Sup. 1939,

§ 923e; Rev. 1949, § 6716. We considered the constitutionality of the Unfair Sales Practices Act in *Carroll* v. *Schwartz*, 127 Conn. 126, 14 A.2d 754 (1940). The question was raised in that case on a demurrer to the complaint. We held (p. 128) that the act was not price fixing legislation and was therefore not violative of the due process provisions of the federal and state constitutions, so far as those provisions operate to prevent price fixing. U.S. Const. amend. XIV § 1; Conn. Const. art. I § 12. We discussed (p. 129) the expressed legislative purpose of the act and concluded (p. 131) that it was a legitimate exercise of the police power of the state. We expressed doubt as to the constitutional validity of the provision relating to prima facie evidence of intent to injure competitors or destroy competition. We held (p. 132), however, that this issue was not before us because the complaint alleged that the acts described were done with intent to injure competitors or destroy competition and that allegation was admitted by the demurrer. We pointed out (p. 128) that the only method of enforcement was by injunction at the instance of the party injured.

In 1955, the General Assembly added a new section to the chapter, thereby instituting the present procedure of a complaint by, and a hearing before, the commissioner. Cum. Sup. 1955, § 2869d (General Statutes § 42-112). Another section, § 2870d (General Statutes § 42-113), added at the same time, superseded the statutory provision for a complaint, by the person allegedly injured, to the Superior Court and provided for a review of the commissioner's action by the Court of Common Pleas, which could affirm, modify or set aside the commissioner's order and enforce it, as affirmed, by injunctive procedure. This new section went further and

fixed a monetary penalty of not less than $25 nor more than $100 for each violation of the commissioner's order after it had become final. The chapter was again amended in 1959 with respect to procedure and to authorize the imposition of a higher minimum penalty, $50, for each violation of an order of the commissioner which had been reviewed and affirmed, in whole or in part, by the court. Public Acts 1959, No. 284, §§ 2, 3. The case before us is governed by the chapter as amended.

To be constitutionally valid, legislation policing the operation of a legitimate business must serve some phase of the public health, safety, convenience and welfare in a reasonable and impartial way. In exercising police power, the legislature has a broad discretion in passing on the need and fashioning the method. "The limitation upon this [legislative] discretion is drawn by the courts at that point where the regulatory measures either fail to serve the public good or serve it in a despotic way." *United Interchange, Inc.* v. *Spellacy,* 144 Conn. 647, 654, 136 A.2d 801. The regulations imposed on a lawful business cannot exceed what is reasonably necessary to accomplish their purpose. *Leach* v. *Florkosky,* 145 Conn. 490, 495, 144 A.2d 334; *State* v. *Porter,* 94 Conn. 639, 645, 110 A. 59.

Proof of an intent to injure competitors or destroy competition has generally been held essential to proof of a violation of unfair sales practices legislation. In the absence of proof of such an intent the act would operate as price fixing legislation and could be challenged on constitutional grounds. *Carroll* v. *Schwartz,* 127 Conn. 126, 130, 14 A.2d 754, and cases cited; *Perkins* v. *King Soopers, Inc.,* 122 Colo. 263, 267, 221 P.2d 343; *State ex rel. Anderson* v. *Fleming Co.,* 184 Kan. 674, 681, 339 P.2d 12;

*Opinion of the Justices,* 152 Me. 458, 463, 132 A.2d 47; *Board of Railroad Commissioners* v. *Sawyers' Stores, Inc.,* 114 Mont. 562, 568, 138 P.2d 964; *Adwon* v. *Oklahoma Retail Grocers Assn.,* 204 Okla. 199, 200, 228 P.2d 376. Where statutes have not expressly required proof of an intent to injure competitors or destroy competition, courts have held that such an intent is, by implication, an essential ingredient of a violation. *State* v. *Walgreen Drug Co.,* 57 Ariz. 308, 317, 113 P.2d 650; *Hill* v. *Kusy,* 150 Neb. 653, 656, 35 N.W.2d 594; notes, 118 A.L.R. 506, 519, 128 A.L.R. 1126, 1136. A provision making proof of wrongful intent a prerequisite to the finding of a violation is therefore properly contained in any unfair sales practices legislation.

We come now to the consideration of the question whether the provision of § 42-114 that "[e]vidence of any advertisement, offer to sell or sale of any item . . . by any retailer . . . at less than cost to him shall be prima facie evidence of intent to injure competitors or destroy competition" is valid constitutionally. When the legislature amended the act in 1955 to make the commissioner the prosecutor of alleged violators and provided for a penalty for each sale or advertisement in violation of the commissioner's order after it became final, the legislature changed the fundamental nature of the act. It made a violation a public, as distinguished from a private, wrong. The statute became penal. *State* v. *Zazzaro,* 128 Conn. 160, 163, 20 A.2d 737; *State* v. *Bishop,* 7 Conn. 181, 185; 14 Am. Jur. 753, § 2. As a penal statute, it must be strictly construed. *Dennis* v. *Shaw,* 137 Conn. 450, 453, 78 A.2d 691.

Words and phrases in a statute must be given the meaning accorded to them by commonly approved usage. General Statutes § 1-1. Those which have

acquired a peculiar and appropriate meaning must be construed and understood accordingly. Ibid. The phrase "prima facie evidence" means evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. *Minicozzi* v. *Atlantic Refining Co.*, 143 Conn. 226, 230, 120 A.2d 924; *State* v. *Nelson*, 139 Conn. 124, 127, 90 A.2d 157; *Chandler* v. *Prince*, 217 Mass. 451, 454, 105 N.E. 1076; *State* v. *Langley*, 92 N.H. 136, 138, 26 A.2d 368; *Gemma* v. *Rotondo*, 62 R.I. 293, 296, 5 A.2d 297; 9 Wigmore, Evidence (3d Ed.) § 2494; 72 C.J.S. 499. Under the prima facie evidence provision of § 42-114, proof that an alleged violator advertised, offered to sell or sold any item of merchandise at less than cost to him would be sufficient to prove that he intended to injure competitors or destroy competition. Such proof would thus establish a violation of the act, furnish the basis for an order by the commissioner and ultimately subject the offender to the monetary penalty provided for in the act for a violation of the order. He could offer proof in rebuttal, but if the commissioner or the court chose not to believe it, the prima facie evidence would be sufficient. The provision creates a presumption of guilt and removes the presumption of innocence. It relieves the state, represented by the commissioner, of the burden of proof and fastens it on the alleged violator. It is true that there are criminal statutes which make the proof of certain facts prima facie evidence of other facts essential to the crime. See General Statutes § 30-75 (possession of intoxicating liquors as prima facie evidence of intent to sell) and *State* v. *Wheeler*, 25 Conn. 290, 298; § 14-219 (speed in excess of posted limits prima facie evidence of unreasonable speed) and *Radwick* v. *Goldstein*, 90 Conn. 701, 707, 98 A.

583; § 53-108 (possession of gun, etc., as prima facie evidence of intent to hunt, etc.). However, the fact which is specified to be prima facie evidence of the fact to be inferred or presumed must be a fact which in common experience leads naturally and logically to the fact inferred or presumed. In the mind of the trier, the proof of one must produce the belief that it is more probable than not that the other, the ultimate fact, is thereby established. *Tot* v. *United States,* 319 U.S. 463, 467, 63 S. Ct. 1241, 87 L. Ed. 1519; *McFarland* v. *American Sugar Refining Co.,* 241 U.S. 79, 86, 36 S. Ct. 498, 60 L. Ed. 899; *Great Atlantic & Pacific Tea Co.* v. *Ervin,* 23 F. Sup. 70, 80; 1 Wharton, Criminal Evidence (12th Ed.) § 91.

A transcript of the testimony taken by the commissioner was before the trial court and is included in an appendix to the plaintiff's brief. It discloses that the president of the plaintiff, who testified in its behalf, freely admitted advertising and selling the two items as charged and that it was done for the purpose of attracting customers to the plaintiff's store in the ordinary course of merchandising its wares; he denied that there was any intent to injure any competitor or to destroy competition, although he conceded that the purpose of the advertisement was to induce customers to come to the plaintiff's store and, it was hoped, purchase not only the items advertised but others as well. This testimony alone is not sufficient to sustain the burden of proving the intent which is a necessary ingredient of a violation of the statute. The testimony demonstrates only that the plaintiff made an effort which at most may have attracted some customers away from competing stores. This conduct falls far short of conduct intended to "injure com-

petitors or destroy competition." § 42-114. It is no more than the conduct practiced ordinarily in the course of a competitive business. The fact that an article is advertised for sale or sold at less than cost to the seller does not, in and of itself, produce, naturally and logically, a belief that the advertisement or sale is intended to injure competition or destroy competition. To fall within the prohibition of the statute, the conduct must have been predominantly motivated by an intent to "injure competitors or destroy competition" as distinguished from an intent to attract immediate patronage to the store in the ordinary course of business. The language of § 42-114 concerning proof of intent has the inevitable effect of placing on the alleged violator the burden of proving his innocence. We hold that the provision that "[e]vidence of any advertisement, offer to sell or sale of any item of merchandise by any wholesaler or retailer at less than cost to him shall be prima facie evidence of intent to injure competitors or destroy competition" constitutes a denial of due process of law and is therefore invalid. *Perkins* v. *King Soopers, Inc.*, 122 Colo. 263, 268, 221 P.2d 343; *Wiley* v. *Sampson-Ripley Co.*, 151 Me. 400, 407, 120 A.2d 289; 1 Callmann, Unfair Competition and Trade-Marks (2d Ed.) § 27.5 (b); see comment, "Sales Below Cost Prohibitions," 57 Yale L.J. 391, 411.

It is not necessary, on the facts presented in the case at bar, to strike down the entire Unfair Sales Practices Act. The provision we hold invalid does not deal with the necessity of proving intent. It has been pointed out herein that for an unfair sales practices act to be valid, proof of intent must be expressly or impliedly required. The provision under consideration deals only with the means of

proving intent. It is clearly separable. The act can operate effectively and fulfil its purpose without the invalid provision. *Amsel* v. *Brooks,* 141 Conn. 288, 300, 106 A.2d 152, and cases cited.

There is error, the judgment is set aside and the case is remanded with direction to render judgment setting aside the order of the defendant.

In this opinion the other judges concurred.