## STATE OF CONNECTICUT *v.* ROBERT LELYO

### APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CR 16-2793

Argued September 20—decided December 3, 1965

*John F. Scully,* of Hartford, for the appellant (defendant).

*Henry J. Goldberg,* assistant prosecuting attorney, for the appellee (state).

KOSICKI, J. The facts are not in dispute. On November 20, 1964, the defendant was a drug retailer and manager of the patent medicine and drug department in the Robert Hall shopping center in Bloomfield. On that date, Robert Feinberg purchased in that drug department, at 58 cents each, two items, namely, Breck Cream Rinse and Mennen Push Button Deodorant. These items, both being toilet preparations, had been advertised in the Hartford Times on November 19 for sale at this drugstore at the stated prices, and the advertisement came to the notice of Feinberg. The manufacturer's wholesale list price for Breck Cream Rinse was $8 per dozen or 66 2/3 cents per unit, and for the Mennen Push Button Deodorant, $8.52 per dozen or 71 cents per unit, according to an exhibit in evidence which is the only publication in the drug trade listing all the manufacturers' wholesale prices.

The trial court reached the conclusion that the defendant was guilty as charged in the information in that he had wilfully violated General Statutes § 19-242. This section, which is a part of chapter 343, entitled "Retail Drug Control Act," reads: "Unfair competition. No drug retailer shall sell any drugs, medicines, cosmetics, toilet preparations or drug sundries at a price below the manufacturer's wholesale list price per dozen; nor, in the case of biologicals or other of the above-mentioned products which are not customarily sold in dozens or greater lots, sell such products at less than the manufacturer's wholesale list price per unit. Notwithstanding the provisions of the preceding sentence, any drug retailer may sell at less than the prices specified above, imperfect or actually damaged merchandise or bona fide discontinued lines of merchandise, if

advertised, marked and sold as such; merchandise sold upon the complete final liquidation of any business; merchandise sold or donated for charitable purposes or to unemployment relief agencies and drugs or drug sundries sold to physicians, dentists, veterinarians or hospitals, but not for the purpose of resale by them." In § 19-243 a penalty is provided for a wilful violation of § 19-242 or any provision of the chapter referred to.

The defendant has assigned error in the conclusions of the court, in the ultimate finding that upon all the evidence he was guilty as charged beyond a reasonable doubt, and in the overruling of his claim of law that § 19-242 is unconstitutional, invalid and illegal. The claims of law are not set out in detail in the assignments of error as they should have been, but the record discloses that they were made by way of a demurrer filed by the defendant (but evidently not pressed by him to decision) and that these claims were presented in the argument before the trial court and so treated in the briefs of counsel on appeal. The defendant's precise claim is that his arrest and conviction have violated rights guaranteed him by § 1 of the fourteenth amendment to the federal constitution and § 12, article first, of the constitution of Connecticut, in that § 19-242 is a price-fixing statute, is an arbitrary and unreasonable exercise of the police power, is an attempt to regulate a business without a sufficient public interest, and is arbitrary and discriminatory in its classifications and application.

The issue presented on appeal is whether, as applied to the sale of toilet preparations or drug sundries, which were the articles involved in this case, § 19-242 is a price-fixing statute not lying within the broad discretion of the legislature under its police powers and therefore not a constitutionally valid

regulation of a business the defendant had a right to pursue. The test of such validity is "whether (1) some need for serving the public health, safety or general welfare makes the regulatory legislation necessary or desirable, and (2) the legislation serves that need in a way which is not arbitrary, discriminatory and confiscatory to an unreasonable and unnecessary degree. In passing upon the need and in fashioning the method of serving it, the legislature under its police powers has a broad discretion. The limitation upon this discretion is drawn by the courts at that point where the regulatory measures either fail to serve the public good or serve it in a despotic way." *United Interchange, Inc.* v. *Spellacy,* 144 Conn. 647, 654.

There is nothing in the record or in the evidence to show that the toilet preparations sold in this case had any reasonable or necessary relation to the control of the drug trade over which the state could exercise police regulation in the interest of public health, safety, and welfare. The inclusion in the statute of toilet preparations or drug sundries, among other items of a medicinal or pharmaceutical nature, does not endow them with properties of preparations broadly referred to as drugs and properly subject to control under the drug act. No pharmacist's license is needed to deal in cream rinses or deodorants. They can be purchased as easily in a department store as in an apothecary shop.

It is the contention of the prosecution that § 19-242, as it applies to the case before us, is a valid and lawful determination by the legislature of prohibited acts for the promotion of public health, safety and welfare and that the particular enactment is designed to accomplish this purpose in a fair and reasonable way. Cf. *Pierce* v. *Albanese,* 144 Conn. 241, 249 (sale of liquor to intoxicated persons); *Schwartz* v. *Kelly,* 140 Conn. 176, 180, 181 (minimum

retail prices for branded liquor) ; *State* v. *Stoddard,* 126 Conn. 623, 632 (regulation of milk prices) ; *Nebbia* v. *New York,* 291 U.S. 502, 536 (same). In support of its position, the state asserts that the clearly discernible, lawful and reasonable objects of chapter 343 and § 19-242 are to control and stabilize the retail drug and toilet preparation industry and to prevent the sale of inferior merchandise and promote the public health ; that the legislature could reasonably determine that, without some form of control over retail prices, cutthroat competition would ensue and drug retailers would be induced to introduce inferior merchandise ; and that to prevent this condition by establishing minimum prices would promote public health and welfare.

The Achilles' heel in this argument lies in the assumption that toilet preparations are includible, by definition, use and purpose, among drugs, medicines, biologicals and other pharmaceutical products and medical supplies over which the state can and does exercise a reasonable supervisory power in the interest of public health and safety. Because toilet preparations may be sold in drugstores does not necessarily make them drug or medicinal compounds. When the constitutionality of a statute is attacked, a court may examine a statutory definition to see whether it logically and fairly describes what it purports to define. *United Interchange, Inc.* v. *Spellacy,* 144 Conn. 647, 655. The further argument concerning the discouragement of the sale of inferior merchandise is answered by § 19-242 itself, which permits any drug retailer to sell at less than the fixed minimum prices "imperfect or actually damaged merchandise or bona fide discontinued lines of merchandise, if advertised, marked and sold as such."

The remaining argument of the prosecution, that the statute lies within the police powers of the state

by tending reasonably to eliminate cutthroat competition, thereby discouraging the sale of cheaper and, presumably, inferior merchandise, has been dealt with by the legislature in General Statutes, chapter 736, entitled "Unfair Sales Practices." It is provided in § 42-114 of that chapter that "[n]o retailer shall, with intent to injure competitors or destroy competition, advertise, offer to sell or sell at retail any item of merchandise at less than cost to the retailer, and no wholesaler shall, with such intent, advertise, offer to sell or sell at wholesale any item of merchandise at less than cost to the wholesaler. Evidence of any advertisement, offer to sell or sale of any item of merchandise by any retailer or wholesaler at less than cost to him shall be prima facie evidence of intent to injure competitors or destroy competition."

In holding that the prima facie dispensation of § 42-114 was unconstitutional as being violative of the due process provisions of the federal and state constitutions, our Supreme Court said: "Proof of an intent to injure competitors or destroy competition has generally been held essential to proof of a violation of unfair sales practices legislation. In the absence of proof of such an intent the act would operate as price fixing legislation and could be challenged on constitutional grounds. *Carroll* v. *Schwartz,* 127 Conn. 126, 130 . . . and cases cited; *Perkins* v. *King Soopers, Inc.,* 122 Colo. 263, 267 . . . ; *State ex rel. Anderson* v. *Fleming Co.,* 184 Kan. 674, 681 . . . ; *Opinion of the Justices,* 152 Me. 458, 463 . . . ; *Board of Railroad Commissioners* v. *Sawyers' Stores, Inc.,* 114 Mont. 562, 568 . . . ; *Adwon* v. *Oklahoma Retail Grocers Assn.,* 204 Okla. 199, 200 . . . . Where statutes have not expressly required proof of an intent to injure competitors or destroy competition, courts have held that such an intent is, by implication, an

essential ingredient of a violation. *State* v. *Walgreen Drug Co.,* 57 Ariz. 308, 317 . . . ; *Hill* v. *Kusy,* 150 Neb. 653, 656 . . . ; notes, 118 A.L.R. 506, 519, 128 A.L.R. 1126, 1136. A provision making proof of wrongful intent a prerequisite to the finding of a violation is therefore properly contained in any unfair sales practices legislation." *Mott's Super Markets, Inc.* v. *Frassinelli,* 148 Conn. 481, 487; see *Carroll* v. *Schwartz,* supra.

Under our Fair Trade Act, General Statutes, chapter 735, which is nonpenal and provides for civil remedies against a person for advertising, offering for sale or selling a trade-marked commodity at less than the price stipulated in any contract between the producer and any person relating to the sale or resale of that commodity (§ 42-109), it was held that the statute was not unconstitutional either because it fixed prices or because under it the plaintiff declined to sell to the defendant; the plaintiff obtained injunctive relief. *Burroughs Wellcome & Co.* v. *Johnson Wholesale Perfume Co.,* 128 Conn. 596, 600, 602. In effect, the court held that the statute was not unconstitutional merely because it enabled one seller of goods to fix by contract the price at which another may sell them. It appears that the actionable wrong is not the selling below the fixed resale price of the commodity in question, as a commodity, but the selling below the fixed resale price of the commodity with the manufacturer's trademark, trade name or label affixed thereto. The manufacturer's identification of the commodity is symbolic of the goodwill which rightfully belongs to him; and it is this right which the fair trade statutes are designed to protect. 52 Am. Jur., Trademarks, Tradenames, and Trade Practices, §§ 182, 184.

The statute before us, § 19-242, is penal and must be strictly construed. *Dennis* v. *Shaw,* 137 Conn.

450, 453. As price-fixing legislation, unaffected with a public interest, and only to the extent applicable to the facts in this case, it is violative of the due process provisions of the federal and state constitutions. U.S. Const. amend. XIV § 1; Conn. Const. art. I § 12.

There is error, the judgment is set aside, and the case is remanded with direction to render judgment that the defendant is not guilty and ordering that he be discharged.

In this opinion DEARINGTON and KINMONTH, Js., concurred.