WILBUR L. CORSON, Sr., PLAINTIFF-RESPONDENT, v.
JAMES O. KEANE, INDIVIDUALLY, AND JAMES O.
KEANE AND WANDA PARKER, ALSO KNOWN AS
WANDA PASZKIEWICZ, DEFENDANTS-APPELLANTS.

Argued March 6, 1950—Decided March 20, 1950.

*Mr. Barney B. Brown* argued the cause for the appellants.

*Mr. Warren C. Douglas* argued the cause for the respondent (*Mr. Walter S. Keown*, attorney).

The opinion of the court was delivered by

BURLING, J. This is an appeal by the defendants from a judgment of the Camden County Court entered in favor of the plaintiff pursuant to a jury verdict. The appeal is addressed to the Superior Court, Appellate Division, but has been certified on our own motion.

The question involved is whether an agreement alleged by the plaintiff to have been made between the parties is within the prohibition of *R. S.* 45:15–1 *et seq.,* and therefore illegal and void.

*R. S.* 45:15–1 provides that:

"No person shall engage either directly or indirectly in the business of a real estate broker or salesman, temporarily or otherwise, except as otherwise provided in this article, without being licensed so to do as hereinafter provided."

*R. S.* 45:15–3 provides that:

"A real estate broker, for the purposes of this article, is defined to be a person, firm or corporation who, for a fee, commission or other valuable consideration * * * offers or attempts to negotiate a loan secured or to be secured by a mortgage or other encumbrance upon * * * real estate for others."

*R. S.* 45:15–4 excludes persons of various statuses, not here involved, from the applicability of the Act.

*R. S.* 45:15–2 provides that:

"Any single act, transaction or sale shall constitute engaging in business within the meaning of this article."

At the close of the plaintiff's case a motion was made by the defendants for a dismissal of the complaint on the ground, which was pleaded in the defendants' answer as a separate defense, that the alleged contract contemplated the negotiation of a loan to be secured by a mortgage upon real estate for others and therefore was in contravention of the statute (*R. S.* 45:15–1 *et seq.*) since the plaintiff was not licensed as a real estate broker. The motion was denied; no reason was given for the action denying the motion but the colloquy between the court and attorney indicates that the trial court was of the opinion that the agreement did not come within the statute (*R. S.* 45:15–1 *et seq.*). At the conclusion of the entire case, the defendants' motion was renewed and again denied. The court's charge to the jury included a reading of that portion of the statute defining a real estate broker and an instruction that the jury should decide whether the plaintiff attempted to negotiate a mortgage loan, and further charged that if the plaintiff did attempt to negotiate such a loan there should be a verdict of no cause of action. The jury rendered a verdict in favor of the plaintiff and judgment was entered thereon by the court in the amount of $500.

The evidence evolved at the trial, considered in a light most favorable to the plaintiff, is that the plaintiff is a professional engineer; that he has never been a licensed real estate broker; that the defendants, the owners of a motel, had originally

engaged the plaintiff to render engineering services in connection with the construction of the motel; and that during the course of construction the defendants, being desirous of obtaining additional funds to finance the project sought assistance in such endeavor from the plaintiff. The plaintiff's version of the conversation embracing the agreement upon which his suit is predicated is contained in his testimony, as follows:

"Mr. Keane told me he was endeavoring to get further finances so that he could finish up the project at a fuller construction than he intended, and he asked me if I could put him in touch with a party or broker whereby he could get further finances and I told him at that time that was entirely outside of the engineering field. However, should I hear of anyone, I'd be glad to get in touch with them. He said: 'Well, if you can do that, I will give you $500.00.' "

The plaintiff further testified that pursuant to the foregoing agreement various contacts were made by him including a contact with one George A. Taylor and the latter's broker, Francis A. Bickert; that through his efforts a meeting was arranged between Taylor, Bickert and the defendants and that subsequently Taylor advanced $50,000 to the defendants as a loan secured by a real estate mortgage. Bickert received a commission from the defendants for his services as a licensed broker in the transaction. The plaintiff did not attend any of the meetings between the parties to the mortgage transaction or participate in the transaction other than as above recited.

The defendants, on appeal, maintain the position taken by them before the trial court. The plaintiff contends that the agreement and his activity thereunder are not within the provisions of *R. S.* 45:15–1 *et seq.,* because, in the language of his brief, "Plaintiff did not negotiate, he merely put the defendant in a position where he might negotiate." "He had kept his part in the matter by bringing the two parties, Bickert and Keane together."

The finely drawn issue thus presented is one of novel impression in this State and necessitates an exploration of the meaning of the word "negotiate." Light may be shed

upon the subject by analyzing the duties of a broker. Does "negotiating" require the conducting by a broker of all proceedings in a transaction from the initial steps looking to the making of a contract to and including the ultimate conclusion thereof, or does it connote something less than that. If less, how much less? A real estate broker is a special agent of the one who employs him. 12 *C. J. S., Brokers, p.* 30, § 11. This is the established rule and has been so recognized in this State. See *Austin J. Waldron, Inc., v. Cutley,* 105 *N. J. Eq.* 586 (*Ch.* 1929); affirmed, 105 *N. J. Eq.* 736 (*E. & A.* 1929). The authority of such a special agent is circumscribed by the terms of his agency agreement and may be narrow or broad dependent upon the creative authority. His employment contract may require much or little activity upon his part. He may, by the terms of his employment, be required to effect a sale or merely produce a customer. See *Restatement of the Law, Agency, pp.* 1050 *et seq.,* § 448. The following language appearing in the *Restatement of the Law, Agency,* § 53 (b), at *p.* 134, furnishes some enlightenment:

"Unless the price and other terms have been completely stated by the principal, it is the normal inference that an agent employed 'to buy' or 'to sell' land and not given a formal power of attorney is authorized merely to find a seller or a purchaser with whom the principal is to conduct the final negotiations. This inference is strengthened if the agent is a broker who ordinarily merely solicits; even where the complete terms have been set out, it is ordinarily inferred that such a person is employed merely to find a customer."

While judicial construction of the word "negotiate" under real estate broker's licensing acts has not resulted in unanimity among the courts of the several jurisdictions in which the problem has been presented, the majority of such courts have given a broad interpretation thereto. The Supreme Court of New York, in dismissing an action by an unlicensed broker to recover commissions for introducing persons as a result of which a loan was consummated, used the following cogent language:

"The essential feature of a broker's employment is to bring the parties together in an amicable frame of mind, with an attitude

toward each other and toward the transaction in hand which permits their working out the terms of their agreement. They may reach that agreement, without his aid or interference. Indeed, in a transaction of any magnitude, the terms would never be settled beforehand or negotiated finally by the broker. * * *

"This does not mean that the broker has not negotiated the transaction. * * *

"If the statute does not apply to such a situation, then it is a toothless enactment. Every unlicensed broker will make the same argument that the plaintiff here has made, that he did not have to bring the parties to actual agreement upon all the details, that that phase was something for the parties themselves to determine. In short, every unlicensed broker will be enabled to carry on his business just as he did before the statute came into existence, simply by calling himself a finder, an originator, an introducer, instead of a broker. This would be an absurd limitation of the statute and one unfounded in reason or policy. A broker 'negotiates' just as much when he brings parties together in such frame of mind that they can by themselves evolve a plan of procedure, as when he himself carries on the discussion and personally induces an agreement to accept a specific provision." *Baird v. Krancer*, 138 *Misc.* 360, 246 *N. Y. S.* 85 (*N. Y. Sup. Ct.* 1930).

The foregoing language was adopted by the Superior Court of Pennsylvania in 1949 in dismissing the complaint of an unlicensed broker who had done nothing more than introduce a prospective purchaser of real estate to the owner pursuant to an agreement by the owner to pay the plaintiff a commission "if you bring me buyer." The bringing together of the parties by the plaintiff resulted in a sale of the real estate. The court, in reversing the action of the trial court in submitting to the jury the question of whether the activity of the plaintiff constituted negotiating within the meaning of the licensing act, decided that the question was one of law to be determined by the court and that the court should have directed a judgment for the defendant since "recovery on the part of the plaintiff was precluded by the Real Estate Brokers License Act. * * *" *Alford v. Raschiatore*, 163 *Pa. Super.* 635, 63 *A.* 2d 366 (*Superior Court of Pa.* 1949).

The *ratio decidendi* of the foregoing cases must perforce be adopted if consideration is to be given to the *ratio legis* and the licensing act is to be rendered effective. The licensing of real estate brokers is common in the various states.

See 8 *Am. Jur., Brokers, p.* 993, § 7. The New Jersey act has been held to be regulatory and not merely for the purpose of raising revenue. See *Kenney v. Paterson Milk & Cream Co.,* 110 *N. J. L.* 141 (*E. & A.* 1932). See also *R. S.* 45:15–9, 10, 13, 17 as amended by *L.* 1948, *c.* 155.

The construction given to similar licensing acts by the courts of our neighboring states of New York and Pennsylvania is in conformity with the decisions of our own courts in the several cases wherein related aspects of the present question were in issue. See *Kenney v. Paterson Milk & Cream Co., Inc., supra; Donadt v. Eberle,* 20 *N. J. Misc.* 349 (*Dist. Ct.* 1942), and *Bierman v. Barthelmeus,* 24 *N. J. Misc.* 35 (*Dist. Ct.* 1946). Such a construction is in conformity with and impelled by the intention of the Legislature. Our present licensing act has its source in *L.* 1921, *c.* 141, § 1, *p.* 370, and it was first amended by *L.* 1925, *c.* 243. In 1925, our former Supreme Court decided that the language of the act as then existing did not contemplate that the execution of a single transaction was to be considered as being engaged in business within the meaning of the statute. *Wensley v. Godby,* 101 *N. J. L.* 325 (*Sup. Ct.* 1925). In 1931, the Legislature, by *L.* 1931, *c.* 286, § 1, *p.* 720, again amended the statute by adding the words "temporarily or otherwise" after the words "to engage either directly or indirectly in the business of a real estate broker or salesman" in what is presently known as *R. S.* 45:15–1 and also added what is now known as *R. S.* 45:15–2 as follows: "Any single act, transaction or sale shall constitute engaging in business within the meaning of this article." The Legislature by such action clearly manifested an intention to close avenues to the unlicensed participation in the business of real estate brokerage.

The application of the broad language of our statute results in the conclusion that the alleged agreement upon which the plaintiff's suit is predicated is within the prohibition of *R. S.* 45:15–1 *et seq.*

Accepting the evidence as true in support of the agreement alleged by the plaintiff to have been made between himself and the defendants and its performance, the construction of the

pertinent statute in relation thereto presented a question of law which should have been decided by the trial court and it was error to submit the question to the jury.

The judgment is reversed and the cause is remanded to the County Court of Camden County with direction to enter judgment for the defendant.

*For reversal*—Chief Justice VANDERBILT, and Justices CASE, HEHER, WACHENFELD and BURLING—5.

*For affirmance*—None.