548 P.2d 841

Marcell **WHITAKER**, Appellant,

v.

**ARIZONA REAL ESTATE BOARD** and **J. Fred Talley, Commissioner of Real Estate,** Appellees.

**No. I CA–CIV 3030.**

Court of Appeals of Arizona, Division 1.

April 20, 1976.

Rehearing Denied May 26, 1976.

Review Denied June 22, 1976.

Gary Peter Klahr, Phoenix, for appellant.

Bruce E. Babbitt, Atty. Gen., by James W. Woodcock, Asst. Atty. Gen., Phoenix, for appellees.

## OPINION

HOWARD, Chief Judge.

The issue in this case is whether appellant is engaged in a business which requires compliance with the licensing provisions of the Arizona Real Estate Act, A.R.S. Sec. 32–2101 et seq.

Appellant conducts a business in Tucson, Arizona known as "Rentex of Tucson". Appellant compiles a catalogue of available rentals and sells the list to prospective tenants for a flat $30 annual fee. He and his employees contact landlords, secure information from them on their rentals and with the landlords' permission, they list the details of the property in their Rentex catalogue. The landlords pay nothing to Rentex and are told that prospects will contact them directly. Rentex does not enter into any negotiations with the landlords and prepares no leases or any other legal documents. Prospects are obtained through ads placed in the newspaper by Rentex. Examples of advertisements which have appeared in the local newspapers are:

"AMPHI, 1 br, $85, most util. pd., pets ok, no lease, inquire 1101 RENTEX 623–6401 Fee"

"APARTMENTS FOR RENT 1000 Vacancies Daily

RENTEX

1904 E. Broadway 623–6401."

Rentex also prints a brochure on the front of which appears:

"Need A Rental Home

Or Apartment????

We can find it for you,

and save you unnecessary

leg work"

The brochure states that Rentex, for an annual fee of $30, will supply a list of rental vacancies which is kept current and verified on a daily basis in order to insure that the property is still vacant.

The brochure also states:

"FREE rental counseling available.

If you are new to the Tucson area or if you are a native without a place to live and would like to know what the situation is like here, just stop by our office or give us a call. We can advise you on your particular circumstances based on up to date evaluations of the rental vacancies in the entire area."

The prospects are told by appellant that they must contact the landlord themselves.

A licensed real estate broker, whose duties are supervisory, is "associated" with appellant. He makes sure there is no embezzlement, that the company is "putting out the service we say we are going to put out," and that "office procedures are mechanically tight." Appellant has no broker's license and he employs no licensed real estate salesman.

This action commenced when appellant filed a special action in superior court alleging that appellees were threatening to close his business and/or begin civil or criminal prosecution against him and his employees if he did not comply with the Real Estate Code. Appellees responded and filed a counter-petition for an injunction restraining appellant from engaging in his business until such time as he complied with the applicable Arizona statutes.

The trial court denied appellant's requested relief and granted the injunctive relief prayed for by appellees.

On appeal, appellant contends he has not engaged in the business of a real estate broker and, if the statutes are construed as applicable to this activity they are unconstitutional.

The parties have cited as authority cases from other jurisdictions involving the conduct of a business similar to appellant's. These cases are based upon the statutory definition of real estate broker in their respective jurisdictions and are of no help to us here. Cf. *Real Estate Commission of Maryland v. Phares*, 268 Md. 344, 302 A.2d 1 (1973); *Dyer v. Watson*, 121 Cal.App.2d 84, 262 P.2d 873 (1953).

When this action was commenced, A.R.S. Sec. 32–2101 in pertinent part provided:

"24. 'Real estate broker' means a person, other than a salesman, who, for another and for compensation: . . .

(h) Advertises or holds himself out as being engaged in the business of buying, selling, exchanging, rental or leasing real estate or counseling or advising thereon. (i) Assists or directs in the procuring of prospects, calculated to result in the . . . leasing or rental of real estate."

▇ The foregoing statute, being remedial in nature, requires liberal construction to accomplish its purpose. *Arizona Real Estate Department v. Arizona Land Title & Trust Co.*, 9 Ariz.App. 54, 449 P.2d 71 (1968). The purpose underlying the statutes regulating real estate activities is to protect the public from unscrupulous and unqualified persons. *Bonasera v. Roffe*, 8 Ariz.App. 1, 442 P.2d 165 (1968).

▇ It is clear that appellant's conduct falls within the statutory definition of "real estate broker". He assists in the procuring of prospects for "another" and not for himself. He receives compensation from the prospects. We note that the Arizona statute does not specify the source of the compensation. Further, appellant's conduct is calculated to result in the leasing or rental of real estate. The court did not err in requiring that appellant be a licensed real estate broker.[1] Moreover, the advertisements and the brochure fall within the provisions of A.R.S. Sec. 32–2101 subsec. 24(h).

▇ Appellant argues that application of the Real Estate Code to his business violates the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution. In support of this proposition he relies on two cases: *United Interchange v. Spellacy*, 144 Conn. 647, 136 A.2d 801 (1957); *United Interchange, Inc., of Massachusetts v. Harding*, 154 Me. 128, 145 A.2d 94 (1958). In these cases the state statutes had defined a real estate broker as including any person or firm who, for a fee in connection with any contract, undertook to promote the sale of real estate through the listing of such property in a publication issued primarily for such purpose or for referral of information concerning properties to licensed real estate brokers, or both. In each case, Universal Interchange, Inc., published two publications known respectively as the "Buyers Digest" and the "Brokers Bulletin" for United Interchange.

The Buyers Digest was a magazine published monthly, containing advertising of business and income-producing properties for sale, lease or exchange. It was sent free of charge to libraries, chambers of commerce and the like. The Brokers Bulletin was a pamphlet designed to keep subscribers informed as to properties currently available and was distributed free of charge. Both publications depended entirely on advertising for revenue. The sales method employed was to solicit advertising from the owners of property. The contract price for the advertising was based solely on the space used and not on the value of the property.

The court in *Spellacy* pointed out that the legislature may not regulate the lawful business of advertising by arbitrarily and unreasonably defining it as something it is not. In *Harding* the court agreed with *Spellacy* and added that it would be unfair to require a purveyor of advertising space to pass an examination in which he must demonstrate special knowledge of and skill in the real estate business in order to continue in his advertising business. In both *Harding* and *Spellacy* the courts held that the statutes, requiring appellants therein to become licensed, constituted an unreasonable, arbitrary and discriminatory exercise of the police power in violation of the Fourteenth Amendment to the United States Constitution.

The factual difference between the *United Interchange* cases and the case sub judice is manifest. Appellants in those cases

---

1. The statutes were amended while this case was on appeal to specifically apply to the type of business being conducted by appellant. See, A.R.S. Sec. 32–2101 24(m). Such abundant caution on the part of the legislature does not mean that the statutes prior to amendment were not applicable.

were performing much like an average daily newspaper. They were solely providing space. Here, much more is being done in that there is direct contact with prospects and concomitant opportunities for abuse which the licensing laws are calculated to minimize.

Although appellant claims that the only advice given prospects on rentals is information as to neighborhood amenities, his brochure indicates otherwise. Further, the counseling offered provides an opportunity to enter areas which require knowledge of real estate and rental values. Opportunities also exist for advisors or counselors to channel prospects to certain landlords who are willing to give "kickbacks".

These opportunities for abuse justify an application of the licensing laws to appellant's business. Appellant's constitutional claims are without merit.

Affirmed.

KRUCKER and HATHAWAY, JJ., concurring.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. Sec. 12–12(E).