**DIVERSIFIED GENERAL CORPORATION, Plaintiff and Appellant,**

v.

**WHITE BARN GOLF COURSE, INC., et al., Defendants and Respondents.**

No. 15462.

Supreme Court of Utah.

Aug. 31, 1978.

Thomas N. Crowther of Parsons & Crowther, Salt Lake City, for plaintiff and appellant.

Robert V. Phillips, Ogden, for defendants and respondents.

MAUGHAN, Justice:

Plaintiff, a Utah corporation, initiated this action to recover a commission, claimed pursuant to a written agreement denominated by the parties a "Finders Agreement." After completing discovery defendant moved for summary judgment on the ground plaintiff was performing the serv-

---

ices of a real estate broker as specified in § 61–2–2, U.C.A., 1953, was unlicensed under chapter 2, Title 21, and was, therefore, precluded from maintaining such an action under § 61–2–18(a), U.C.A., 1953. The trial court granted defendant summary judgment on the aforecited ground and plaintiff appeals. We affirm. No costs awarded. All statutory references are to U.C.A., 1953, unless otherwise noted.

The finders agreement recited as consideration the listed services and consultation set forth. Defendant was described as a corporation seeking purchasers, who would be willing to enter into an agreement to purchase its real property. The parties agreed plaintiff should have "the right to act as finder for purchase of the property from the corporation." The agreement recited that in consideration of the services as a finder, defendant agreed to pay plaintiff 13⅓ percent of the sales price. The agreement provided the terms "sale, according sale" included "the transfer, contract for sale, or other disposal of all or substantially all of the property described; or as a merger, consolidation, or other reorganization of the Corporation."

Plaintiff further agreed it would not be entitled to compensation in the event no purchase of the property was made during the effective time of the agreement. Plaintiff was also given a lifetime membership in defendant's country club.

The parties further agreed plaintiff should "not be under any liability for or in respect of any matter not connected with this Agreement except for lack of good faith and for obligations expressly assumed in this Agreement." The parties agreed plaintiff was to render no other services than those specifically provided. The parties specified the sale price as $1,545,000.00.

The deposition of the President of plaintiff was published and quoted by the court in its memorandum decision. Plaintiff's President stated the purpose of the agreement was to give him an opportunity as a finder to find a buyer. His objective was to locate a buyer for the property and bring him to defendant, and for this service plaintiff was to receive a commission. No real estate broker was involved in behalf of either plaintiff or defendant.

The trial court ruled that one, who undertakes on a commission or fee basis to secure a purchaser for property belonging to another, is within the Real Estate Broker's Statute, Title 61, Chapt. 2, and must be licensed. 61–2–18, prohibits an action for recovery of compensation.

61–2–2, provides:

The term 'real estate broker' within the meaning of this chapter shall include all persons, partnerships, associations and corporations, foreign and domestic, *who for another* and for a fee, commission or other valuable consideration, or who with the intention or in the expectation *or upon the promise of receiving* or collecting a *fee, commission* or other valuable consideration, . . . *assists or directs* in the *procuring of prospects* . . . *which does* or *is calculated to result* in the *sale,* exchange, leasing or renting *of any real estate* . . . [Emphasis supplied.]

In *Anderson v. Johnson*[1] the Court ruled that one who accompanied a licensed real estate broker, and assisted him in obtaining a listing of a farm, from the owners, was not a real estate broker or salesman; within the licensing statutes. Therefore, the complaint, seeking recovery on the broker's agreement to pay for such assistance, stated a claim.

This Court stated:

. . . The second part of the statute [61–2–2] calls for more careful consideration. Do the words and terms 'or assists or directs in the procuring of prospects' apply to appellant? Does the following include the acts of the appellant:

'or assists or directs . . . the negotiation or closing of *any transaction* which does or is calculated to result in the sale, exchange, leasing or renting of any real estate'?

---

1. 108 Utah 417, 160 P.2d 725, 729, 167 A.L.R. 768 (1945).

While these terms are very broad and inclusive, we think they do not. The primary purpose of real estate business is to sell real estate or its use and from such transactions receive a fee or commission. While it is necessary to secure listings, the term 'real estate prospect' refers to one interested in the purchase of realty or in obtaining a lease of its use and does not refer to one from whom you might secure a listing.

Had the legislature intended to prohibit one from assisting a real estate broker to secure listings, it could have done so without difficulty. If we should stretch the meaning of the statute where it uses the words

'or assists . . . the negotiation . . . of any transaction . . . calculated to result in the sale, exchange, leasing or renting of any real estate'

to include the plaintiff as a real estate salesman, it would be just as feasible to include the abstractor who prepared an abstract of the property or the stenographer who typed the contract of sale or the deed or lease used in the transaction.[2]

Justice Wade, in a concurring opinion, stated:

. . . A reading of the statutes regulating real estate brokers makes it apparent they were enacted for the benefit of the public to protect them from dishonest and unscrupulous real estate agents. Such protection of the public is not needed from the casual or remote influence of a stenographer or a person who introduces a real estate broker to one who may wish to deal with him. Neither the stenographer nor the man who introduces the broker in the example I have mentioned are active participants in any contract affecting real estate or any liability of the persons entering into such contracts or listings. The dealings which the statutes aim to protect the public in are those which result in legal liabilities between the parties. Nothing the stenographer or the man who introduces the real estate broker does, has that effect. This is true even though the real estate broker contracts to pay the man who introduces him a part of his commission in the event he makes a sale.[3]

Here, the written finder's agreement, in effect, appointed plaintiff as a special agent with authority to find a prospective purchaser for defendant's property. This agreement even recited that plaintiff owed the agent's duty of good faith to his principal and provided for a commission based on the specified sale price.[4]

In *Corson v. Keane*[5] plaintiff urged his activity was not covered under the real estate licensing statutes since he did not negotiate, but merely put the defendant in the position where he might negotiate, viz., plaintiff's bargain was merely to bring the two parties together.

The court questioned whether "negotiating" required the conducting by a broker of all proceedings in a transaction from the initial step to the making of a contract or whether it could connote something less. The court stated a real estate broker is a special agent of one who employs him, and his authority is circumscribed by the terms of the agency agreement. He may by its terms be required to effect a sale or merely produce a customer. The court cited the following:

The essential feature of a broker's employment is to bring the parties together in an amicable frame of mind, with an attitude toward each other and toward the transaction in hand which permits their working out the terms of their agreement. They may reach that agreement without his aid or interference. Indeed, in a transaction of any magnitude, the terms would never be settled beforehand or negotiated finally by the broker. . . .

2.  108 Utah 424–425, 160 P.2d 729.

3.  108 Utah 427, 160 P.2d 730.

4.  See *Seal v. Powell*, 9 Utah 2d 372, 374, 345 P.2d 432 (1959).

5.  4 N.J. 221, 72 A.2d 314, 316 (1950).

This does not mean that the broker has not negotiated the transaction. . . . If the statute does not apply to such a situation, then it is a toothless enactment. Every unlicensed broker will make the same argument that the plaintiff here has made, that he did not have to bring the parties to actual agreement upon all the details, that that phase was something for the parties themselves to determine. In short, every unlicensed broker will be enabled to carry on his business just as he did before the statute came into existence, simply by calling himself a finder, an originator, an introducer, instead of a broker. This would be an absurd limitation of the statute and one unfounded in reason or policy. A broker 'negotiations' just as much when he brings parties together in such frame of mind that they can by themselves evolve a plan of procedure, as when he himself carries on the discussion and personally induces an agreement to accept a specific provision. *Baird v. Krancer*, 138 Misc. 360, 246 N.Y.S. 85, 88 (N.Y.Sup.Ct.1930).

The New Jersey court ruled the broad language of the real estate broker's statute resulted in the conclusion the agreement, upon which plaintiff's suit was predicated, was within the statutory prohibition.[6]

In *Carnahan v. McCarver*[7] plaintiffs contended that merely supplying information as to who might be interested in purchasing real estate did not constitute assisting another in the procuring of prospects.

The Oregon statute, which is similar to 61–2–2, provides a real estate broker was:

. . . any person who, for another and for compensation or with the intention or in the expectation or upon the promise of receiving or collecting compensation: . . . [a] assists or directs in the procuring of prospects, calculated to result in the sale, exchange, leasing or rental of real estate. O.R.S. 696.010(8)(j).

The court ruled the statutes involved clearly and explicitly prevented others than brokers from receiving remuneration for aiding another in consummating the sale of real property by furnishing the name or names of interested purchasers.

In *Whitaker v. Arizona Real Estate Board*,[8] the court interpreted the following provisions of A.R.S. 32–2101:

24. 'Real estate broker' means a person, other than a salesman, who, for another and for compensation: . . . (h) Advertises or holds himself out as being engaged in the business of buying, selling, exchanging, rental or leasing real estate or counseling or advising thereon. (i) *Assists or directs in the procuring of prospects, calculated to result* in the . . . leasing or rental of real estate. [Emphasis supplied.]

The court observed the statute, being remedial in nature, required liberal construction to accomplish its purpose. The underlying purpose of statutes regulating real estate activities was to protect the public from unqualified and unscrupulous people. It ruled the conduct of plaintiff fell within the statutory definition of "real estate broker." The court explained plaintiff assisted in the procuring of prospects for "another" and not for himself; he received compensation from the prospects. The court noted the statute did not specify the source of the compensation. Further, plaintiff's conduct was calculated to result in the leasing or rental of real estate. It concluded the trial court had not erred in its determination requiring plaintiff be a licensed real estate broker.

In the matter at hand, plaintiff relies on the finder's exception created by judicial construction in California, viz., one who simply finds and introduces two parties to a

---

6. See 24 A.L.R.3d 1160, Anno. Validity, Construction, And Enforcement of Business Opportunities or Finder's Fee Contract, § 6(a), pp. 1172–1173; *Brakhage v. Georgetown Associates*, 33 Colo.App. 385, 523 P.2d 145 (1974); *Goff v. Halandras*, Colo.App., 523 P.2d 147 (1974).

7. 255 Or. 36, 463 P.2d 857 (1970).

8. 26 Ariz.App. 347, 548 P.2d 841 (1976).

real estate transaction need not be licensed as a real estate broker.[9] The California courts have consistently adhered to this exception for a period in excess of fifty years, although in 1929, the licensing statute was amended to include in the definition of a real estate broker one who "solicits" for prospective purchasers. (Stats.1929, ch. 130, § 223). Subsequently, the court ruled that by the addition of these words, the legislature did not intend them to mean the same as "introduces an owner and a prospective purchaser."[10] In *Crofoot v. Spivak*[11] the court stated there had been no amendment of the act, which would change the scope of the definition of who was a real estate broker, since the interpretation in *Shaffer v. Beinhorn*.[12] Under such circumstances, the court stated, there would be no justification to modify an interpretation in which the legislature had acquiesced for such a long period of time.

Section 10131, California Business And Professional Code (as amended 1961) provides:

A real estate broker within the meaning of this part is a person who, for compensation or in expectation of a compensation, does or negotiates to do one or more of the following acts for another or others:

(a) Sells or offers to sell, buys or offers to buy, solicits prospective sellers or purchasers of, solicits or obtains listings of, or negotiates the purchase, sale or exchange of real property.

When this statutory provision is contrasted with the comprehensive language of section 61-2-2 it becomes apparent a judicial interpretation creating a finder's exception would violate the express language of the enactment. A "real estate broker" under this section is one, who for another, and for a fee or commission, "assists or directs in procuring prospects"; which action is calculated to result in the sale of real estate.

The duties undertaken by plaintiff in the finder's agreement fall precisely within the statutory definition of a real estate broker. No evidence was adduced to bring the transaction within any of the exceptions contained in 61-2-2.

ELLETT, C. J., and WILKINS and HALL, JJ., concur.

CROCKETT, Justice (Dissenting):

I am impelled to dissent on the grounds that the defendant bargained for and received the benefit of the plaintiff's service, it suffered no disadvantage because of the technical fact that the plaintiff was not licensed as a real estate broker, and that under those circumstances it is contrary to fundamental principles of justice and equity that the defendant is allowed to repudiate its agreement to pay for plaintiff's services.[1]

The court's decision would be correct if the service rendered involved a high degree of education, training or other special qualification so that, in its absence, there might be some hazard to the public welfare. In such an instance, it is understandable that a person who undertakes to render such a specialized service without a license should be penalized by not being permitted to recover therefor. On the other hand where the service rendered to another does not require such specialized qualifications, it seems to me but an egregious injustice to permit one to ask for, receive, and take the benefit of the service and refuse to pay for it upon a technicality.

I have no disagreement with the proposition that the licensing statute should be so construed and applied as to effectuate its

---

9.  *Shaffer v. Beinhorn*, 190 Cal. 569, 213 P. 960 (1923); *Tyrone v. Kelley*, 9 Cal.3d 1, 106 Cal. Rptr. 761, 507 P.2d 65 (1973).

10.  *Freeman v. Jergins*, 125 Cal.App.2d 536, 271 P.2d 210, 220 (1954).

11.  113 Cal.App.2d 146, 248 P.2d 45 (1952).

12.  Note 9, supra.

1.  See dissenting opinions in *Mosley v. Johnson*, 22 Utah 2d 348, 453 P.2d 149 (1969); *Meridian v. McGlynn/Garmaker Co.*, Utah, 567 P.2d 1110 (1977).

purpose.[2] But that purpose is not to prevent willing and industrious persons from employing their initiative and enterprise in rendering a useful service in order to make a living therefrom, nor to enable designing or scheming persons to take advantage of their efforts, then refuse to pay them. On the contrary, the only legitimate application of the statute should be to protect the public in areas where it needs protection. In regard to that proper application, it should also be kept in mind inasmuch as the statute is one which places limitations upon the freedoms which everyone should enjoy of earning their livelihood, it should be strictly construed against any such incursion upon those fundamental liberties.

The illogic and incongruity of giving the statute an over-broad interpretation is seen in the fact that if that is done, it would include anyone who in any way aids or assists in such matters, even including a chauffeur who drives a party to see the property, the stenographer who types the contract, and the filing clerk who keeps the files in order.

I do not see how it would defeat or impair the true purpose of the licensing statute to permit a person who acts only as a "finder," and who does nothing in regard to negotiating the sale, nor the formulation of a contract, nor as to the condition of title, nor any other details about the transaction, to recover for his services.[3] In support of this position, it is submitted that, as shown in the main opinion, there is no significant difference between the wording of our own statute and that of California; and that their cases of *Tyrone v. Kelley*,[4] and others the main opinion cites, are grounded upon sound reasoning and principles of justice which would lead to a just result if applied in this case.

Reverting to the facts in the light of what has just been said above, it should be

noted particularly that the only authority given the defendant under the agreement, and the only thing that it is claimed to have done, was to act as a "finder" in this very substantial transaction; and that this did not in any way intrude within the prerogatives and responsibilities which require the special training and qualifications of a real estate broker.

It is for the foregoing reasons, and upon the very simple and fundamental principle of justice that no one should profit from the efforts of another without paying compensation therefor, that I would not permit the defendant to break faith with its commitment under the agreement by invoking the technicality of a broker's license requirement upon the plaintiff, and thus perpetrating what seems to be an obvious cheating of the plaintiff out of the just rewards for its efforts.[5]

---

2. *Whitaker v. Arizona Real Estate Board*, footnote 8, main opinion.

3. See *Andersen v. Johnson*, footnote 1 main opinion, especially Justice Wade's concurring opinion.

4. See footnotes 9 et seq., main opinion.

5. 6A Corbin, Contracts, at Section 1512 states that "the real defrauder seems to be the defendant who is enriching himself at the plaintiff's expense."