**Henry Thomas ADAMS and Henry Thomas Adams, III, Plaintiffs and Appellants,**

v.

**Stephen L. GUBLER, Ted Gubler, Venla Gubler, Steamboat Vista, Inc., the Leslie Wilcox Family Trust, LaPrele G. Orton, Glen L. Gubler and Jean G. Cox, Trustees of the Leslie Wilcox Family Trust, Defendants and Respondents.**

No. 19342.

Supreme Court of Utah.

Dec. 31, 1986.

LaMar J. Winward, Steven E. Snow, St. George, for plaintiffs and appellants.

J. MacArthur Wright, St. George, for defendants and respondents.

DURHAM, Justice.

The plaintiffs seek reversal of a judgment denying their claim for specific performance of a real estate sales contract, and the defendants cross-appeal a portion of the judgment ordering them to return $7,500 paid to them by the plaintiffs. We affirm.

In the fall of 1979, Henry Thomas Adams ("Adams") became involved in negotiations with defendants Stephen Gubler and his father, Ted Gubler, to purchase as co-owners property known as the Graff farm. Adams sought to acquire a fifteen percent interest in the property (ten percent for himself and five percent for his son and co-plaintiff). The record is not clear about what happened with the initial negotiations; however, it does show that on December 1, 1979, the Leslie Wilcox Family Trust ("the Trust")[1] purchased the Graff property.

Two plans for further disposition of the property eventually developed. The first involved establishing a corporation called Steamboat Vista, Inc., that would purchase the property and develop it. Stephen Gubler, allegedly acting on behalf of the corporation, signed two stock purchase agreements to transfer an aggregate of fifteen percent of the corporation's stock to Adams and his son. Both agreements contained clauses stating that the sale of the stock was subject to the Board of Directors' approval.

On January 7, 1980, Adams gave Steven Carter, the real estate broker involved in the initial negotiations, a check for $7,500 for the purchase of the Steamboat Vista, Inc., stock. Steven Carter was to hold the check in his trust account until the Board of Directors approved the stock purchase agreements. On January 21, 1980, Steven Carter gave Stephen Gubler a check for $7,500. Carter testified at trial that it was the $7,500 from Adams and that Adams had told him to release it to the Gublers to use in the purchase of the property on behalf of Steamboat Vista, Inc. Stephen Gubler testified, however, that Steven Carter told him that the money was a portion of Stephen Gubler's share of the commission from the sale of the Graff property to the Trust.[2]

The Trust and the corporation contracted for the sale of the farm to the corporation. The corporation, however, never raised the funds necessary for the purchase and never enforced the sales contract. The Board of Directors ultimately rejected the stock purchase agreements. The Gublers did not seek specific performance of the stock purchase contract.

The second plan for development of the property developed when the Gublers found an outside investor, Everett Johnston, who wanted to purchase an interest in the property directly from the Trust, but who expressed reluctance to deal through the corporation. Johnston purchased a fifty percent interest in the property on March 18, 1980.

In the early part of January 1980, Ted Gubler signed a handwritten document agreeing to convey an aggregate fifteen percent interest in the Graff property to Adams and his son. He signed the agreement subject to the Trustees' "written ok." On March 12, 1980, six days before the sale to Johnston, the Trustees sent a letter to Adams informing him that they had rejected the purchase agreement.

Adams brought suit seeking specific performance of the handwritten agreement and the return of the $7,500 paid to Stephen Gubler. His principal theory was that the Trust was the "alter ego" of Ted Gubler and that the condition precedent in the contract was therefore invalid. The trial judge found that the Trust was a valid trust and that since the conditions of the agreement to sell an interest to Adams had not been met, the contract was unenforceable. The trial judge also found that the $7,500 paid to Stephen Gubler was Adams' money and not a portion of the commission Steven Carter owed Stephen Gubler and therefore ordered it returned.

 In equity cases, the appellant may appeal on the facts as well as on the law; however, this Court will not disturb the trial court's findings unless the evidence clearly preponderates against them. *Baker v. Pattee*, 684 P.2d 632, 634 (Utah 1984); *Parks Enterprises v. New Century Real-*

---

1. Ted Gubler established the Trust in 1973 and transferred to it all of his property.

2. The sale of the Graff farm generated a commission of approximately $80,000, half of which apparently belonged to Stephen Gubler for his role in the initial purchase by the Trust.

*ty, Inc.,* 652 P.2d 918, 920 (Utah 1982); *Jensen v. Brown,* 639 P.2d 150, 151 (Utah 1981).[3] The evidence introduced by the plaintiffs was directed to the lack of independence of the Trustees. That evidence indicated that the Trustees had never opposed any of Ted Gubler's proposed transactions involving the Trust, that the Trustees in office at the time of the Graff farm purchase were all relatives of Ted Gubler, and that Ted Gubler handled the day-to-day business affairs of the Trust. The plaintiffs also introduced evidence indicating that only one of the Trustees ever personally inspected the Graff farm before the purchase, that Ted Gubler still lived in his family residence without paying rent to the Trust, that at least one of the Trustees had no knowledge of any bank accounts held by the Trust, and that the Trustees never held a formal meeting to approve or reject the contract with Adams prior to the commencement of the lawsuit.

Other evidence showed, however, that the Trustees had the legal power to oppose any of Ted Gubler's proposals and that all of them were aware of that power even though they had never exercised it. They also knew that any transaction entered into by Ted Gubler on behalf of the Trust would require approval of the Trustees before it became binding. The evidence further showed that all of the Trustees approved the purchase of the Graff farm before the Trust purchased the property and that they all had agreed to reject the agreement with Adams.

■ The trial court found that the Trustees had adequate knowledge of the affairs of the Trust; that they were reasonably well apprised of its assets, business, and other matters; and that they were independent of Ted and Stephen Gubler. As the summary indicates, the parties introduced conflicting evidence on the amount of control Ted Gubler exercised over the Trust. The trial judge found that the plaintiffs had not proved the invalidity of the Trust for want of independence of the Trustees, and the evidence does not clearly preponderate against this finding.

Since we uphold the trial court's finding concerning the Trust's validity, we also necessarily uphold the validity of the conditions precedent in the agreement to sell an interest to Adams. The plaintiffs do not contend that the conditions in the agreement were met. Because the uncontradicted evidence indicates that they were not, the contract never became enforceable; therefore, the trial court correctly denied the plaintiffs' request for specific performance.

■ The trial court also ruled that the $7,500 paid to the Gublers was the money that the plaintiffs had given Steven Carter to hold in his trust account pending approval of the stock purchase agreements. The defendants argue that this money was actually a portion of a commission owed by Steven Carter to Stephen Gubler. At trial, Steven Carter testified in accordance with the judge's findings, and the defendants offered Stephen Gubler's testimony in opposition. Again, we will not disturb the trial court's finding unless the evidence clearly preponderates against it. Since the evidence consisted of conflicting testimony, it does not clearly preponderate against the trial court's findings.

Affirmed.

HALL, C.J., and STEWART, HOWE and ZIMMERMAN, JJ., concur.

---

3. The standard of review used in these cases was based on Utah Const. art. 8, § 9, the repeal and reenactment of which became effective on July 1, 1985. The new article no longer provides for a different standard of review of the facts in equity cases; however, the amendment to Utah R.Civ.P. 52(a), that becomes effective January 1, 1987, provides: "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Utah R.Civ.P. 52(a) (the text of the new rule appears at 49A Utah Adv. Rep. 37). Although this case was submitted before these changes, we note that the changes would not affect the outcome.