SECURITY STATE BANK, an Idaho corporation, Plaintiff and Respondent,

v.

D. Wayne BROADHEAD, Defendant and Appellant.

Grant CAMPBELL, Intervenor Plaintiff and Appellant,

v.

SECURITY STATE BANK, Intervenor Defendant.

No. 19652.

Supreme Court of Utah.

Feb. 25, 1987.

B.H. Harris, Steven R. Fuller, Logan, for defendant and appellant.

N. George Daines, Logan, for plaintiff and respondent.

DURHAM, Justice:

D. Wayne Broadhead (debtor) seeks reversal of a deficiency judgment against him in favor of Security State Bank (bank). Debtor seeks remand for an award of damages on a counterclaim he filed against bank. We affirm.

*The Deficiency Judgment*

Debtor obtained financing from bank for his purchase of a 1977 Dodge truck by executing an installment note in favor of bank on September 20, 1977. Debtor failed to make payments as they came due under the terms of the note. In October 1978, bank repossessed the truck from the premises of a business owned by debtor's father-in-law. During the course of the repossession, an argument erupted over the ownership of a piece of welding equipment that had been installed on the truck. Debtor removed the welding equipment from the truck before the truck was transferred to bank's agent.

At trial, bank presented testimony indicating that bank repeatedly contacted debtor concerning the deficiency and after the repossession mailed debtor a notice of sale stating that the truck would be sold at a private sale on November 10, 1978, at 12:00 p.m. The truck was not sold, however, until April 20, 1979.

Debtor claims that the notice sent by bank was insufficient, that the sale was not conducted in a commercially reasonable manner, and that bank's recovery is barred by an accord and satisfaction between the parties.

Debtor's assertion that he did not receive notification of the sale rests on the position that debtor's testimony was more credible than that of bank's witnesses. The trial court was the proper forum for the resolution of this issue. In order to successfully attack a factual finding of the trial court, "an appellant must marshal all the evidence in support of the trial court's findings and then demonstrate that even [when viewed] in the light most favorable to the court below, the evidence is insuffi-

cient to support the findings."[1] *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985). Debtor's claim that he could not remember being notified, when weighed against the evidence presented by bank's witnesses, does not even approach the threshold necessary for us to disregard a finding of fact.

■ Debtor claims that bank's notice was technically deficient because it did not comply with U.C.A., 1953, § 70A–9–504(3), which provides:

> Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.

Debtor argues that because the sale was held after the date stated in the notice, he was prejudiced because his right to redeem the property was circumvented.

We have previously considered that argument. In *Scharf*, we stated:

> [The notice sent by creditor] stated the day *on which* the sale was to occur, while the actual sales occurred one day and nine days, respectively, after the date fixed in the notice.
>
> In addition to relying on the technical deficiencies in the notice to protect him from the deficiency judgment, [debtor] claims that he was prejudiced because he could have used the several days that elapsed between the date the sale was to have occurred and the date it actually occurred to find a buyer who would pay a higher price. His notice contention is without merit. In *Pioneer Dodge Center, Inc. v. Glaubensklee*, Utah, 649 P.2d 28 (1982), the debtor received notice that her repossessed truck would be auctioned off at 11:00 a.m. on a specified day; instead, the truck was sold at 10:00 a.m. Because the debtor did not show up at 11:00 a.m., we held that she was not prejudiced by the error. *Id.* at 29. By looking beyond the technicalities of the notice requirement to its essential purpose, *Pioneer Dodge* made it plain that the formal elements of the notice requirement must not be followed to the frustration of its purpose. "The purpose of the notice requirement is for the protection of the debtor, by permitting him to bid at the sale, or arrange for interested parties to bid, and to otherwise assure that the sale is conducted in a commercially reasonable manner." *FMA Financial Corp. v. Pro-Printers*, Utah, 590 P.2d 803, 807 (1979). The notice requirement gives the debtor the opportunity to actively protect his interests.

*Id.* at 1071 (emphasis in the original).

In the case at bar, debtor has shown no prejudice from the delay in sale. Debtor offered some hazy, speculative evidence that before the repossession he was tentatively engaged in trying to mount a snow plow on the truck in conjunction with a possible sale for an amount sufficient to pay the loan. We do not see how the existence of a tentative prerepossession sale is relevant to any harm suffered by debtor as a result of the late sale of the truck. The record indicates that although the notice sent to debtor warned him that he would be personally responsible for any deficiency after the sale and debtor was acquainted by past experience with repossession procedures, he did nothing to contact bank or to inform it of the existence of a buyer to whom the truck could be sold for the full amount of the outstanding balance. Indeed, the evidence presented by bank indicates that debtor was advantaged by the late sale because bank was able to achieve an unusually high price, more than $1,000 over Blue Book value, for the truck by waiting to sell it.

We also reject debtor's claim that the sale of the truck through a used car lot was commercially unreasonable.

U.C.A., 1953, § 70A–9–507(2) provides:

---

1. Utah Rule of Civil Procedure 52(a), which provides that the finding of a trial court judge shall not be set aside unless "clearly erroneous," was not in effect when this case was taken under advisement. An analysis under that provision would not change the result in this case.

The fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner. If the secured party either sells the collateral in the usual manner in any recognized market therefor or if he sells at the price current in such market at the time of his sale or if he has otherwise sold in conformity with reasonable commercial practices among dealers in the type of property sold he has sold in a commercially reasonable manner.

Debtor insists that the sale was unreasonable as a matter of law because bank did not solicit bids through newspaper advertisement and received three bids on the truck. In support of his argument, debtor cites *FMA Financial Corp. v. Pro-Printers,* 590 P.2d 803 (Utah 1979). Debtor's reliance on *FMA Financial Corp.* is misplaced. In that case, we merely commented that the creditor's failure to advertise the sale and its casual bid procedures were evidence that it had not met its burden of establishing commercial reasonableness. *Id.* at 807. Whether a sale is commercially reasonable is a matter to be determined on a case-by-case basis according to the circumstances of the sale and the business context in which it occurred. *Scharf,* 700 P.2d at 1070–71. In this case, bank presented expert testimony indicating that selling repossessed vehicles through a used car lot was in conformity with usual commercial practice. The commercial reasonableness of the sale is also evidenced by the fact that debtor's own expert witnesses admitted that it is rare to recover substantially more than Blue Book value for a repossessed vehicle.

We turn next to debtor's argument that an accord and satisfaction was reached barring collection of the deficiency. Debtor's wife and father-in-law testified that they spoke to the president of bank in June 1979. The parties' versions of the conversation vary markedly. According to debtor's wife and father-in-law, when bank's president was threatened with a slander suit over bank's agent's comments during the repossession, he agreed to forgive the debt, stating that it had been "charged off" bank's books. Bank's president testified that he was never threatened with a slander suit, although he admitted that he had told debtor's wife and father-in-law that the debt had been "charged off." A witness for bank testified that "charged off" is a banking term meaning only that the debt has been deducted from the capital assets of a bank and does not imply that the debt has been forgiven.

A party seeking to establish an accord and satisfaction bears the burden of proof and must demonstrate the existence of declarations "of such a clear nature as to assure that the parties are aware of the extent and scope of such agreement." *Messick v. PHD Trucking Service, Inc.,* 615 P.2d 1276, 1277 (Utah 1980); *see United American Life v. Zions First National Bank,* 641 P.2d 158, 160 (Utah 1982). We agree with the trial court that debtor did not meet his burden. We need not reach any issues concerning the allegations of slander raised by debtor's father-in-law because, in the absence of an accord and satisfaction, the one-year statute of limitations on libel actions contained in U.C.A., 1953, § 78–12–29(4) bars the four-year-old claim.

*The Counterclaim*

Debtor raised a counterclaim accusing bank of tortiously repossessing another vehicle from debtor in 1982.

The facts surrounding the 1982 repossession are unclear from the record. It appears that debtor owned a boat that he desired to sell to Stanley Hansen. Hansen went to bank to obtain a loan to purchase the boat. Bank learned from Hansen that debtor had financed the boat through a loan from a bank in Wyoming, using as collateral the boat and a 1979 truck upon which was mounted the welding equipment that bank believed was wrongfully removed from the truck it repossessed from debtor in 1978. Bank loaned Hansen the money to purchase the boat. Bank learned from the Wyoming bank that debtor's note

secured by the 1979 truck and welding equipment was in arrears. A witness for bank testified that in order to improve bank's tactical position with debtor, bank with its own funds purchased debtor's overdue note, pursuant to which it then repossessed the 1979 truck. Debtor has offered no authority indicating that it was improper for bank to buy his overdue note and to repossess the truck; rather, debtor relies on a claim that bank used Hansen's funds to pay off the note and that debtor was therefore discharged. We note that the documents and testimony in the record indicate that bank bought debtor's note in an apparently routine commercial transaction and that any cause of action arising out of impropriety in the loan to Hansen is an issue for Hansen, not debtor, to pursue with bank.

Affirmed. Costs to respondent.

HALL, C.J., and HOWE and ZIMMERMAN, JJ., concur.

STEWART, Associate C.J., concurs in the result.