Ernest J. MILLER, Plaintiff and Respondent,

v.

John D. ARCHER and Elizabeth B. Archer, both individually and as Trustees for the Elizabeth Daly Archer Trust, and Hubert Wolfe, Judy W. Wolfe, and Elliott Wolfe, as Trustees for Elliott Wolfe Trust No. 701, Defendants and Appellants.

John D. ARCHER and Elizabeth B. Archer, both individually and as Trustees for the Elizabeth Daly Archer Trust, and Hubert Wolfe, Judy W. Wolfe, and Elliott Wolfe, as Trustees for Elliott Wolfe Trust No. 701, Third–Party Plaintiffs,

v.

William J. COLMAN, Third–Party Defendant.

No. 860371–CA.

Court of Appeals of Utah.

Feb. 10, 1988.

E. Craig Smay, Sessions & Moore, Salt Lake City, for defendants and appellants.

William L. Fillmore, L. Brent Hoggan (argued), Marlin J. Grant, Olson & Hoggan, Logan, for plaintiff and respondent.

Before BILLINGS, DAVIDSON and GARFF, JJ.

## OPINION

BILLINGS, Judge:

Appellants John D. Archer and Elizabeth B. Archer, both individually and as Trustees for the Elizabeth Daly Archer Trust, and Hubert Wolfe, Judy W. Wolfe, and Elliott Wolfe, as Trustees for Elliott Wolfe Trust No. 701 ("Archer" and/or "Wolfe"), appeal from the trial court's judgment ordering specific performance of an option to

buy land in favor of Respondent Ernest J. Miller ("Miller"), and from the award of accrued interest to Miller. We affirm.

## FACTUAL BACKGROUND

Miller's action for specific performance against Archer and Wolfe arises out of an earlier business relationship between Archer, Wolfe, and William J. Colman, the third-party defendant ("Colman"). Because it is integral to our decision, we set out in detail the factual background of this complex transaction. On appeal, we view the facts in the light most favorable to the trial court's findings. *See Security State Bank v. Broadhead,* 734 P.2d 469, 470–71 (Utah 1987).

In the late summer or early fall of 1981, Colman approached Archer and Wolfe for a loan of $750,000. Colman urgently needed the money to continue development of a business venture. Archer advised Colman that he and Wolfe were not interested in a simple loan due to the adverse tax consequences resulting from interest income, nor would they invest the $750,000 amount requested. Colman then offered Archer and Wolfe a limited partnership interest in a salt project known as "Carson Sink" in Nevada ("limited partnership"), and an interest in "Anderson Ranch" which Colman owned.

After consulting with their accountants about the tax consequences, Archer and Wolfe told Colman they would advance a total of $500,000, on the condition that the deal was structured as follows: (1) a $250,-000 investment in the limited partnership, providing research and development tax write-offs, an interest in profits during the life of the partnership, and an overriding royalty thereafter, and (2) cash payment of $250,000 as the purchase price of the Anderson Ranch, coupled with a one-year option under which Colman could repurchase the ranch for $600,000, allowing Archer and Wolfe to treat the dollar return as capital gain.

Frank J. Allen ("Allen"), Colman's attorney, drafted the documents according to this plan. Allen structured the deal as three separate transactions in order to achieve the tax advantages Archer and Wolfe sought: (1) a limited partnership interest; (2) the purchase of Anderson Ranch; and (3) a one-year option to repurchase Anderson Ranch.

Before the documents were executed, Archer and Wolfe agreed to give Colman a one and one-half (1½) year option, instead of the original one-year option, for an increased total purchase price of $650,000, and the documents reflect this change.

The Option states that it was given to Colman "in consideration of the sum of Five Thousand Dollars ($5000.00) and other good and valuable consideration, the receipt of which is hereby acknowledged." Allen testified that the recital of "$5000.00 and other good and valuable consideration the receipt of which is hereby acknowledged" was inserted by him merely as a legal shorthand for the true consideration. He claimed the $5000 was never intended to be the actual consideration for the Option and that is why the recital indicated that $5000 had been paid. Allen claimed that the real consideration for the Option was the execution of the limited partnership agreement, the Anderson Ranch agreement, and the various tax benefits accruing to Archer and Wolfe by the structuring of the deal.

Colman did not pay $5000 to Archer and Wolfe for the Option. Archer and Wolfe made various verbal inquiries regarding payment, to which Colman responded he did not believe he had to pay the $5000 based on the advice of Allen.

On November 2, 1982, Colman executed a Real Estate Contract which assigned his rights under the Option to Miller as Colman could not secure the $650,000 necessary to exercise the Option. Subsequently, Archer and Wolfe received written notice of this assignment and contacted Miller to inform him that the $5000 for the Option had never been paid by Colman. In addition, despite the lack of payment, Archer stated that he and Wolfe were still willing to sell the Anderson Ranch to Miller for a purchase price of $655,000. Negotiations for this sale occurred, but it was never consummated.

On April 8, 1983, Archer and Wolfe attempted to revoke the Option. Subsequently, Miller, Colman and Allen met and discussed the status of the Option and all agreed that the $5000 was never intended to be paid, but merely functioned as window-dressing. The true consideration consisted of the structuring of the transaction. Allen and Colman executed affidavits to this effect following this meeting.

On May 16, 1983, Miller filed this action against Archer and Wolfe and a lis pendens against the Anderson Ranch. Archer and Wolfe later filed a third-party complaint against Colman. On July 1, 1983, Miller tendered to Archer and Wolfe his cashier's check for $650,000 as an exercise of the Option to purchase the Anderson Ranch. The check was deposited in an interest-bearing account, with entitlement to such interest to be determined by the court. Since Miller's July 1, 1983 tender, Archer and Wolfe have held possession and all rights of ownership to the Anderson Ranch.

## CONSIDERATION FOR OPTION

The primary issue on appeal is whether the trial court correctly ruled that the attempted revocation of the Option was ineffective. The trial court found there was adequate consideration to support the Option and therefore Miller was entitled to specific performance. Over Archer's and Wolfe's objections, the trial court admitted parol evidence to ascertain the intended consideration for the Option. On appeal, Archer and Wolfe contend the consideration can be gleaned from the plain language of the Option and, therefore, the trial court erred in admitting such evidence.[1] We disagree.

■ Even if a written agreement appears to be completely integrated, parol evidence is admissible to establish whether there was consideration for a promise. *Soukop v. Snyder*, 709 P.2d 109, 113 (Ha-

waii Ct.App.1985) (quoting Restatement (Second) of Contracts § 218(2) (1981)). A recital of consideration received is usually intended merely as written acknowledgment of the distinct act of payment. It is inserted for convenience, usually because the parties do not want to reveal the real consideration. *Paloni v. Beebe*, 100 Utah 115, 118, 110 P.2d 563, 565 (1941) (quoting 9 Wigmore, Evidence § 2433 (3d ed. 1981)). Therefore, the parol evidence rule does not prevent a party from showing the actual consideration when a nominal consideration is recited. *Wood v. Roberts*, 586 P.2d 405, 407 (Utah 1978).

■ There is substantial evidence to support the trial court's conclusion that the recital of "$5000.00 and other good and valuable consideration, the receipt of which is hereby acknowledged" in the Option was nominal consideration inserted by the drafter of the agreement for convenience as the parties did not wish to reveal in writing the true consideration for the deal.

At trial, there was conflicting testimony on the necessity of paying the $5000 to Archer and Wolfe. Colman claimed he knew that the $5000 was required to be paid before he could exercise the Option. However, Colman's testimony was contradicted by his own admissions on cross-examination, his deposition prior to trial, his affidavit of May 2, 1983, and his contemporaneous handwritten notes. Allen testified that he had consistently informed the parties that he had inserted the $5000 amount on his own, intending it as a legal shorthand for the true consideration, and it was not an item for which the parties bargained.

The trial court found Allen's testimony more credible and consistent than Colman's, finding that the $5000 was never intended to be paid. "[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of witnesses." *Adams v. Gubler*, 731 P.2d 494, 496 n. 3

---

1. The contentions of Archer and Wolfe are inconsistent. They argue the consideration can be gleaned from the plain language of the Option. However, while making this argument, they seem to ignore the plain language of the Option which states that the receipt of the consideration is hereby acknowledged. We will not view the language of the Option out of context as urged by Archer and Wolfe.

(Utah 1986) (quoting Utah R.Civ.P. 52(a)). There is substantial evidence to support the determination of the trial court, and, thus, that finding must be sustained. *Sather v. Pitcher,* 748 P.2d 191, 194 (Utah Ct.App. 1987).

The trial court found the true consideration for the Option was embodied in the phrase "other good and valuable consideration." Because of its ambiguity, the trial court considered parol evidence to disclose its true meaning. "[W]hen a contract is ambiguous, because of the uncertain meaning of terms, missing terms, or other facial deficiencies, parol evidence is admissible to explain the parties' intent." *Faulkner v. Farnsworth,* 665 P.2d 1292, 1293 (Utah 1983); *Colonial Leasing Co. v. Larsen Bros. Const.,* 731 P.2d 483, 487 (Utah 1986). In such a determination, we defer to the finder of fact. *Craig Food Indus., Inc. v. Weihing,* 746 P.2d 279, 283 (Utah Ct.App.1987); *Faulkner v. Farnsworth,* 665 P.2d at 1293; *Winegar v. Smith Inv. Co.,* 590 P.2d 348, 350 (Utah 1979).

The trial court considered the testimony of the parties and found that this phrase referred to the execution of the various documents conveying the Anderson Ranch and limited partnership interests, and the general tax structuring of the total transaction. The trial court looked at the substance of the parties' entire dealings and found that the structuring of the total commitments was the intended consideration for the Option. We cannot say this was error. *Sather v. Pitcher,* 748 P.2d at 194.

Archer and Wolfe also contend that the one and one-half (1½) year option was a new agreement, executed after the original one-year option, and therefore required new consideration. We disagree. The facts support the trial court's finding that the original one-year option was never finalized. The original consideration supported the one and one-half (1½) year option.

The trial court's finding that there was sufficient consideration to support the Option does not invalidate any of the other agreements, as Archer and Wolfe claim. The Option, limited partnership agreement, purchase contract and special warranty deed are in no way impaired and are still valid and enforceable agreements within the context of the larger transaction, as the parties intended. The trial court merely found the execution of these other agreements was the intended consideration for the Option.

## COLMAN'S HANDWRITTEN NOTES

Archer and Wolfe claim the trial court committed reversible error in admitting copies of Colman's handwritten notes, made during the course of the negotiations between him and Archer and Wolfe. The notes conflicted with Colman's trial testimony. The trial court found that, although the notes were not totally legible, partially cut off by the copier, and stapled together by Miller's attorneys, they did provide a certain narrative flow and consistency that gave them substantial credibility. These notes were properly admitted for impeachment purposes. *Schocker v. Milton O. Bitner Co.,* 30 Utah 2d 173, 176, 514 P.2d 1290, 1292 (1973); Utah R.Evid. 801(d)(1)(A). Furthermore, the admission of the notes was duplicative of other competent evidence that impeached Colman's trial testimony, including Colman's prior deposition and affidavit.

## INTEREST

Archer and Wolfe also challenge the award of accrued interest to Miller. The trial court concluded that Miller was entitled to the accruing interest on the $650,000 deposited with the clerk of the court after Archer and Wolfe refused the tender by Miller and retained possession of Anderson Ranch.

Common law and equity require that if a party obligated to sell land retains possession, forcing the buyer to place funds on deposit with the court pending settlement of the action, then the seller is not entitled to the accrued interest on the deposited funds. *Rasmussen v. Moe,* 138

Cal.App.2d 499, 292 P.2d 226, 230 (2 Dist. 1956); *Resnick v. Goldman*, 133 So.2d 770, 771–772 (Fla.1961). The trial court's finding that Archer and Wolfe had enjoyed possession and all rights of ownership of the Anderson Ranch since Miller's July 1, 1983 tender of the $650,000 necessary to exercise the Option was supported by substantial evidence. Archer and Wolfe retained all rents and profits paid for grazing use of the land by third parties. In contrast, Miller received no commercial benefit from the Anderson Ranch. What limited and sporadic recreational use Miller has had of the ranch has been without objection by Archer and Wolfe, and similar to that traditionally enjoyed by many others in the area.

Affirmed. Costs to Miller.

DAVIDSON and GARFF, JJ., concur.